# DECISIONS

## OF THE

# Court of Appeals of Kentucky

## FALL TERM, 1918.

### Willoughby, et al. v. Reynolds, et al.

(Decided November 1, 1918.)

## Appeal from Allen Circuit Court.

1. Appeal and Error—Finding of Chancellor.—Where the only controversy is one of fact, the finding of the chancellor thereon will not be disturbed unless it be against the weight of the evidence.

2. Deeds—Undue Influence—Burden of Proof.—In a contest over the validity of a deed or will, which is charged to have been executed by a grantor or testator under the domination and control of the grantee or devisee, the burden is upon the contestant to show the confidential relation existing between the parties to the transaction, want of consideration and an opportunity for the exercise of undue influence, and the burden then shifts to the grantee or devisee to show that the transaction was fair, free from fraud and undue influence.

NOEL F. HARPER, JOHN H. GILLIAM and W. G. GILLIAM for appellants.

BRADBURN & BASHAM and OLIVER & DIXON for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

In October, 1915, Josie L. Willoughby, a man about eighty-two years of age, died testate, domiciled in Allen county, Kentucky, the owner of some personal property and money. This litigation is over five or six tracts of land which are alleged to contain about six hundred acres,

which it is averred he conveyed to part of his children to the exclusion of the others. He was the father of five children, three sons and two daughters, but one of the sons, John A., died without issue before his father, and a daughter died some time before her father, leaving two children, one of whom, Mrs. Motley, appellee in this case, survives.

Decedent had been married three times but his children were all by his first wife.

This litigation arises out of a deed which Josie L. Willoughby made on December 9, 1912, whereby he undertook to convey to his sons, W. M. Willoughby, T. J. Willoughby, and a daughter, Mrs. Emily Davis, all of his landed estate, reserving to himself only the use and rents of the land during his lifetime, for a recited consideration "of one dollar, cash in hand paid, by each of the second parties, and the further consideration of love and affection that first party bears for the second parties, his children." There were two actions instituted in the court below and afterwards consolidated and prepared and heard together, and determined in one judgment. The first action was filed by W. M. Willoughby against T. J. Willoughby, Mrs. Emily Davis, and her husband, J. H. Davis, and Della Willoughby, wife of T. J. Willoughby, on November 13, 1915, and sought a sale of the several tracts of land deeded by Josie L. Willoughby to his said three children and a division of the proceeds, it being alleged that the three parties were the exclusive owners of the lands and that the property was not susceptible of division into three parts without materially impairing the value of each share and of the whole. By this conveyance a daughter, Mrs. Emily Reynolds, and his granddaughter, Mrs. Motley, the only child of a deceased daughter, were entirely disregarded. T. J. Willoughby and Mrs. Davis, who were made defendants in this first action by their brother, W. M. Willoughby, answered in due time confessing the allegations of the petition and joining in the prayer for a sale of the property and a division of the proceeds, but later Mrs. Davis withdrew this answer and filed another in which she attacked the deed as void. Shortly thereafter Mrs. Reynolds, the daughter who had been left out of the deed, and Mrs. Motley, the granddaughter, who had suffered in like manner, filed their petition to be made parties to the

action, asking to be treated as defendants, and in their petition the names of the heirs of Josie L. Willoughby, the deceased, were set out and the ownership of the property recited, and this was followed by an allegation that the pretended deed of December 9, 1912, executed by Josie L. Willoughby to the three children named therein, was not in fact the deed of said Josie L. Willoughby, but that the said Josie L. Willoughby, grantor therein, did not have "sufficient mental capacity to properly and intelligently transact business or make a deed; he was old and feeble both in mind and body and did not have a rational idea of his property; did not have sufficient mental capacity to rationally and justly dispose of same; that said deed was without valuable consideration, or any consideration; that at the time of the execution of said instrument the decedent was under the complete domination and control of the plaintiffs and defendants (the grantees in said deed), and at said time had some pretended or imaginary grievances against these petitioners (Mrs. Reynolds and Mrs. Motley), and the plaintiffs and the defendants herein took advantage of his mental aberrations and by means of improper, undue and overreaching influences, induced him to undertake to convey and did induce him by said means to undertake to convey all of said land described in said deed without any legal or other considerations." They allege that but for the fact "that Josie L. Willoughby was mentally defective and was unduly and improperly influenced and persuaded, this instrument, which purports to be a deed of gift, would never have been in existence." The prayer asked that the petitioners be made parties and that the deed be declared void and that the lands sought to be sold be declared the joint property of the plaintiffs and defendants and cross-petitioners, each of whom according to the cross-petition was the owner of a one-fifth undivided interest in said lands. Various other pleadings were filed which brought the several matters to issue.

In the meantime, and on the 16th of November, 1915, Eugenia V. Reynolds and Lizzie Motley, who had filed the cross-petition in the first action just referred to, filed a separate and independent action in the Allen circuit court, styled "Eugenia V. Reynolds and Lizzie Motley, plaintiffs v. W. M. Willoughby, &c., defendants," in which petition it was alleged "that Josie L. Willoughby in his lifetime undertook to execute a deed conveying to the

defendants named in the petition certain real estate which he owned and which was situated in Allen and Warren counties; that the grantor was at the time of the making of the deed incapable mentally of making a conveyance of his real property; that he did not have sufficient mental capacity to transact business; that he was old and feeble both in mind and body and did not have a rational idea of his property and did not have sufficient mental capacity to rationally and justly dispose of same; that said deed was without valuable consideration, and that the grantor was under the complete domination and control of the grantees in the deed at the time he undertook to execute the same." A paragraph was also included in the petition which alleged that the deceased had advanced to certain of his children given sums of money, and that W. M. Willoughby had had the use, benefit and control of the lands since the execution of the deed, and that the reasonable rental value of the land per year was one thousand dollars, or a total of three thousand dollars. By another paragraph of the petition it is alleged that on May 25, 1914, the deceased Josie L. Willoughby attempted to execute a will whereby he disposed of all his property remaining, after the execution of the deed on December 9, 1912, and it is here charged that the testator was without mental capacity to make a will at the time he undertook to dispose of his property on the 25th of May, 1914, and asked that the will be declared ineffectual. Finally they pray that the deed be cancelled and held void and that the paper purporting to be a will be adjudged invalid, and that the estate of Josie L. Willoughby be settled and distributed and that each of the parties named be adjudged the owner of a one-fifth undivided interest in the proceeds.

After the consolidation of the two actions a great number of depositions were taken, part to support the deed and will and the balance to impeach their validity. For the contestants of the will and deed some fifty or sixty persons gave evidence tending to show that Josie L. Willoughby at the time and before the making of the deed and up to the time of his death, was in feeble health both in mind and body, subject to mental aberrations and delinquencies which rendered him incapable of fully making a mental inventory of his property or a rational survey thereof, estimating its value, visualizing the objects of his bounty and disposing of his property in accordance

with a fixed purpose of his own. It is also in testimony that the deceased had become possessed of a dislike or hatred, some years before his death, of his daughter, Mrs. Eugenia V. Reynolds, on account of a lawsuit which arose between her husband and the deceased over a horse, and that this antipathy increased rather than diminished from its inception up to the death of the father; that on one occasion, while the father was living alone except for some colored servants in the house, one of his daughters visited him to spend the night and he did not invite her to occupy his room; that he married a third time at the age of seventy-eight or seventy-nine years; that on one occasion after agreeing with his son, T. J. Willoughby, that the son should be appointed administrator of the estate of John A. Willoughby, deceased, the father changed his mind after consulting with W. M. Willoughby, and qualified as administrator of the estate himself without again consulting his son, T. J. Willoughby; that he would sometimes become angry with his children for no apparent cause and would not be friendly with them for a spell; that he slept with a pistol under his pillow and when asked why he did so, explained that he kept it there to defend himself against the ghost of his dead son, and several facts and incidents which displayed other eccentricities and idiosyncrasies. On the other hand three physicians were called who testified that they had known Mr. Willoughby for years before his death, one of them saying he had known him for as many as forty years, and had been his family physician for fifteen years or more before his death, and each of these men gave it as his opinion that the deceased was a man of strong will power and of mental qualities abundantly sufficient to enable him to know his property, its value, the objects of his bounty, his duty to them and to dispose of his property according to a fixed purpose of his own. Several non-expert witnesses were also called to detail incidents in the life of the deceased which were calculated to throw light upon his mental condition at the time and before the making of the deed and will in question. Numerically the evidence for the contestants of the deed and will is the stronger, but no expert witness, physician or alienist testified for contestants or gave any hint that the mind of the testator was unsound, while on the other hand the three physicians testifying in favor of the deed

and will gave it as their opinion professionally as well as from a long personal association with the deceased, that the testator was mentally capable of making either a deed or a will. Through such a mass of testimony the chancellor was obliged to toil, no doubt with much hesitation and misgiving to his conclusion, and but for his personal acquaintance with the witnesses, the community and surrounding circumstances, we apprehend that his task would have been herculean.

The decree entered below finds that Josie L. Willoughby at the time of the execution of the deed on December 9, 1912, "was mentally incompetent by reason of his mental and physical weakness to know his property, or its value, or to know the objects of his bounty or his duty to them, and that by reason of such weakness he was subject to the influence and control of his son, W. M. Willoughby, who stood in a confidential relationship to his father, and that by reason thereof, said Josie L. Willoughby was induced to make said deed, excluding his daughter, Eugenia V. Reynolds and granddaughter, Lizzie Motley. It is therefore adjudged that the alleged deed by Josie L. Willoughby to W. M. Willoughby, T. J. Willoughby and Emily J. Davis, dated December 9, 1912, was and is void, and that the same be and is cancelled, set aside and held for naught."

Perusing the evidence here in the quiet of the capital, so far removed from the active scenes which engulfed the life of Josie L. Willoughby, the conflicts and contradictions are so numerous as to leave the mind in doubt as to whether the grantor-testator in the deed and will was mentally sound, or so deficient as to be unable to dispose of his property according to a fixed purpose of his own. There is evidence, when considered alone, sufficient to support a verdict of a jury or finding of fact of a chancellor on either side of this case, if the opposing side be not considered.

The burden of proof of establishing the confidential relationship of the parties, the want of consideration and the probability of fraud or imposition, was upon the contestants, but when they had made out a *prima facia* case by showing that the father had conveyed the lands to the three grantees without consideration; that one of the grantees possessed great influence with him and control over him, and that grantor was old and feeble, the burden

shifted to the propounders and grantees to show that the transaction was fair, free from fraud, and undue influence. The principle is well stated in the case of Hoeb v. Maschinot, 140 Ky. 330, where the court said:

"Where there exists between two persons a relation of confidence and trust, by which one exerts such an influence over the judgment of the other as to subvert the latter's will and independence, a conveyance by the latter to the former will be set aside as fraudulent upon seasonable complaint. Whether such influence was exerted is a question of fact to be determined from the circumstances. Evidence of the fact may consist of such relationship of blood, or consanguinity, or as attorney and client, guardian and ward, physician and patient, and the like, and when such relationship is shown, and a voluntary conveyance beneficial to the grantee, the burden of proving that in that transaction, the other mind acted freely, of its own volition, is on the person benefited, or the conveyance will be set aside. (Smith v. Snowden, 96 Ky. 32; Maze's Ex. v. Maze, 30 Ky. Law Rep. 679)."

In this case both the law and the facts were submitted to the court for its determination, and it was adjudged that the instrument introduced as the deed was not the deed of Josie L. Willoughby and the same was adjudged invalid. It has long been the rule of this jurisdiction that the verdict of a properly instructed jury will not be disturbed, unless it is palpably and flagrantly against the evidence, and in proceedings in equity the finding of fact by the chancellor will be upheld unless it be against the weight of the evidence. If the matter under consideration upon the facts is doubtful, and the mind of the court, after consideration of all the evidence, is left in doubt as to the right of the matter, it is the duty of this court to give some weight to the finding of the chancellor and to affirm the judgment. We have not been confronted with a case to which this salutary rule seems more applicable than the one under consideration.

As the judgment of the lower court contains a provision that only the issues upon the validity of the deed are adjudicated and all other questions are reserved for future determination, it is unnecessary here for us to consider the questions raised on the pleadings as to the settlement of the personal estate of Josie L. Willoughby.

Judgment affirmed.