## Quinn, et al. v. Hendren.

(Decided March 2, 1920.)

### Appeal from Madison Circuit Court.

1. Deeds—Action to Set Aside—Undue Influence—Mental Capacity. —In this action brought by the heirs at law of a deceased bachelor brother to set aside, òn the grounds of the alleged unsoundness of mind of the grantor and its procurement by fraud and undue

influence on the part of the grantee, a deed made by the former to the latter several years before his death, whereby he conveyed him his land, reserving to himself a life estate therein, evidence examined and held sufficient to support the judgment of the chancellor sustaining the validity of the deed and dismissing the petition.

2. Appeal and Error—Motion for Trial by Jury.—The circuit court's refusal to sustain appellant's motion for a trial by jury of the issues of fact raised by the pleadings, was not error. The action being one of purely equitable cognizance, appellants were not, as a matter of right, entitled to a trial of the issues of fact by a jury. It was in the discretion of the court to allow it as an issue out of chancery, but it would not have been bound by the verdict of the jury. The refusal of the trial by jury was not an abuse of the court's discretion.

E. SELBY WIGGINS and O. P. JACKSON for appellant.

G. MURRAY SMITH for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Richard Quinn, a bachelor sixty-five years of age residing in Madison county, died August 19, 1918, intestate, survived by a brother, John Quinn, and three sisters, Nannie Quinn, Sally Quinn Lynch, widow, and Josie Cornelison, wife of Wm. Cornelison. Shortly after the death of Richard Quinn, one Whit Moody was appointed by the Madison county court administrator of his estate and at once duly qualified as such. The decedent left very little personal property, but died in the possession of about 125 acres of land in which he owned a life estate, but had formerly owned the fee simple title. About three years before his death, however, he by a deed duly acknowledged and recorded, conveyed the land to J. M. Hendren, reserving to himself a life estate in and to the whole thereof.

This action was brought by the brother and three sisters of Richard Quinn, named above, and the husband of the only married one, the brother and sisters claiming as the heirs at law of the decedent title to the land upon which he resided at the time of his death and attacking the validity of the deed by which the land had been conveyed by him to J. M. Hendren, it being alleged in the petition that the deed was without consideration; that the grantor was mentally incompetent to make it and that its execution was procured by fraud and undue influence on the part of the grantee. The administrator was also a party to the action, joining therein as

a plaintiff for the purpose of recovering of Hendren debts aggregating $700.00, which the petition alleged were owing by him in the form of notes to the estate of the decedent, but neither the dates nor amounts of such notes or any of them were stated.

The answer of Hendren traversed the averments of the petition, and following the taking of proof by the parties and submission of the case, the circuit court rendered judgment dismissing the petition. From that judgment this appeal is prosecuted.

Disposing first of the question of appellee's alleged indebtedness to the estate of the decedent Richard Quinn, it is sufficient to say that the evidence regarding that matter consists mainly of hearsay declarations that are incompetent for any purpose; indeed the record furnishes no definite or tangible evidence of such indebtedness and the weakness of the claim is so patent as to render further consideration of it profitless. The attack of appellants upon the deed from the decedent to appellee is attempted to be sustained by the depositions of numerous witnesses which furnish no proof conducing to show any fraud on the part of appellee in procuring the execution of the deed; and while many of the deponents expressed the opinion that Richard Quinn was a person of weak mind, incapable of knowing the value of his land or other property or of understanding the provisions or meaning of the deed by which the land was conveyed the appellee, in only a few instances were these opinions attempted to be supported by a showing of such conduct or acts on the part of the decedent as could be said to prove his mental incapacity to execute a deed. The strongest testimony in behalf of appellants on this question was given by one Gooch who claimed to have acted as committee of the decedent for a time; but no record of an inquest or of his appointment as such committee was introduced nor other authority for his so acting shown. It was shown, however, that Gooch was once sued by the decedent for fraud practiced upon him by the former in a transaction between them and that the court granted the decedent the relief sought.

The evidence of appellants failed to show that any undue influence was exercised upon the decedent by appellee in the procurement of the deed in question. It went no further than to show that Quinn sometimes asked and obtained appellee's advice before entering into a trade or undertaking a business transaction, as he did

of two or three other neighbors on whose integrity and judgment he was accustomed to rely.

Quite a number of witnesses who were well acquainted with Quinn, lived near him and some of whom had business dealings with him, testified that although he was a person of dull mind and often depended upon the advice of others, he was mentally capable of knowing his property and its value and of making a rational disposition of it. In their opinion his frequent seeking of advice was owing to his illiteracy, as he could neither read nor write.

Among the witnesses who thus testified were a justice of the peace who wrote the deed Quinn made appellee and the county clerk of Madison county, both of whom testified that he had a complete understanding of that instrument, the former stating that it was written in accordance with the wishes and direction of the grantor and in his presence. Moreover it was shown by the testimony of numerous witnesses that Quinn had frequently and during the two or three years preceding the execution of the deed declared his purpose to convey his land to appellee, and that after its execution he made no concealment of his having made the deed and often avowed his satisfaction at having done so. The deed was put to record immediately after its execution, and though appellants had knowledge thereof they made no complaint of same during the three years intervening before their brother's death. The evidence also shows that at such times as Quinn declared his intention to convey his land to appellee, he gave as a reason for doing so his dislike of his brother and sisters, because of their having contested the will of their mother by which she had devised the decedent the land owned by her at the time of her death. The contest over the will seems to have been conducted with great bitterness of feeling by the parties but it ended in a compromise whereby the brother and sisters dismissed the contest upon his agreeing to convey them a part of the land. The latter thereupon sold and conveyed the part of the land they were to receive by the compromise to O. P. Jackson, but the bitterness of feeling engendered between the decedent and his brother and sisters by the contest was never healed.

But the strongest evidence of the capacity of the decedent to execute the deed and of his ability to understand the conveyance, is furnished by the facts that for many years prior to his mother's death he alone lived with her, managed and cultivated the farm and made for

her and himself a support therefrom; and that in whatever business transactions he engaged he invariably took care of himself. In addition, following the settlement of the contest over his mother's will, he made with Jackson, vendee of his brother and sisters, a division of the land devised by the will, in which he acted without assistance and seemed to have obtained the advantage of Jackson by getting the larger and better part of the tract. In view of these facts and of the evidence as a whole, we have reached the conclusion that the judgment of the circuit court sustaining the validity of the deed from him to appellee and dismissing the petition is fairly sustained by the weight of the evidence. Tested by the rule announced in the following cases the decedent, Richard Quinn, had the capacity to make the conveyance to appellee attacked in this action: Wathen v. Skaggs, 161 Ky. 600; Lex. & E. R. R. Co. v. Napier's Heirs, 160 Ky. 579.

Appellants' complaint of the circuit court's refusal to allow them a trial by jury of the issues of fact made by the pleadings cannot properly be sustained. The action being one of purely equitable cognizance, appellants were not as a matter of right entitled to a trial of the issues of fact by a jury. It was in the discretion of the court to allow it as an issue out of chancery, but it would not have been bound by the verdict of the jury. The refusal of the jury trial was not therefore an abuse of its discretion. Judgment affirmed.