## Tucker, et al. v. Cornett's Administrator.

(Decided March 8, 1921.)

### Appeal from Marion Circuit Court.

1.  Deeds—Conveyance Between Persons in Confidential Relation—
    Agreement to Support—Valuable Consideration—Burden of Proof.
    —The law looks with suspicion upon transactions between per-
    sons sustaining confidential relations, and where a mother seven-
    ty-one years of age, having other children who have an equal
    claim on her bounty, conveys to her daughter and son-in-law,
    who live with her, her life estate in a farm and all her personal
    property, the burden is on the grantees to show that the transac-
    tion was freely and voluntarily made, and devoid of any vice
    rendering it inequitable or unfair; and the agreement by the
    grantees to support the grantor and pay her funeral expenses
    will not be regarded as a valuable consideration sufficient to
    relieve them of the burden of showing the fairness of the trans-
    action, where the grantor's estate was amply sufficient for all
    her wants, and she was in no way dependent on the grantees
    for support, and the grantees were the real beneficiaries of the
    arrangement.

2.  Deeds—Undue Influence—Sufficiency of Evidence.—In a suit to
    set aside a deed on the ground of undue influence, evidence held
    to sustain a verdict for plaintiffs.

S. A. RUSSELL for appellants.

C. C. BOLDRICK and W. H. SPRAGENS for appellee.

Opinion of the Court by Judge Clay—Affirming.

Margaret A. Cornett died a resident of Marion coun-
ty in February, 1917. She left surviving her three chil-
dren, Sarah A. Tucker, wife of W. T. Tucker, Mary W.
Angell, wife of G. B. Angell, and Isaac Cornett, Jr. Sev-
eral years prior to her death, Mrs. Cornett's husband
conveyed to her a life estate in 256 acres of land, with re-
mainder to her children. Her daughter, Mrs. Tucker,
and her husband purchased the remainder interests of
the other children. On June 29, 1916, Mrs. Cornett exe-
cuted and delivered to Sarah A. Tucker and her husband,
W. T. Tucker, a deed conveying to them her life estate
in the 256 acres of land, and also transferring to them all
the personal property which she then owned. The con-
sideration expressed in the deed was that the second par-
ties should board, clothe and take care of her during her
life, and give her a decent burial at her death.

Shortly after Mrs. Cornett's death, her son-in-law, G. B. Angell, qualified as her administrator, and brought suit against Sarah A. Tucker and her husband to cancel the deed above referred to, on the ground that it was obtained by fraud and undue influence. The issue of undue influence was submitted to a jury which returned a verdict in favor of plaintiff. Thereupon judgment was entered cancelling the deed, and the defendants appeal.

Sarah A. Tucker and her husband had been living on the farm with Mrs. Cornett for several years. Mrs. Tucker says that her mother fell and broke her hip in the year 1910, and was lame from that time until her death, at which time she was seventy-one or seventy-two years of age. During that time she waited on her mother. Her mother's mind was all right when the deed was made. Mr. Angell was present at the funeral, but Mrs. Angell was not present. However, she did not notify Mrs. Angell of her mother's illness or of her death. Neither she nor her husband was present when the deed was signed. She never knew that the attorney who drew the deed was to be there. Her mother had told her she would do right by her if she stayed there. Her mother never delivered the deed to her until some time after it was executed. She knew nothing of her mother's having written to her attorney. When the deed was executed she did not know what was being done. She never knew it had been executed until her mother delivered it to her. After her marriage, her husband rented portions of the farm and paid her mother. W. T. Tucker testified that Mrs. Cornett was a bright, strong minded woman and had her way in most everything. Mrs. Cornett never said anything to him about making the deed, and at no time did he mention the matter to her. He was at the barn when the deed was executed but returned to the house before the men left. He never inquired as to why the attorney who drew the deed was there. He didn't know the purpose of the trip until several weeks after the deed was executed. He never attempted to influence Mrs. Cornett, but always let her have her own way. Miss Worswick, the official court reporter, testified that she had a conversation with Mrs. Cornett, who spoke of the difference in the treatment of her by her two daughters, and said that Mrs. Tucker had always been good and kind to her and that she wanted to pay her daughter for her kindness. At that time her mind was good. She was a bright woman of strong will

power. On cross-examination the witness stated that while Mrs. Cornett was giving her deposition in a case in which Mrs. Cornett was a party, she looked at Mrs. Tucker and Mrs. Tucker would nod her head to indicate how she wanted her mother to answer the question. Witness further stated that she wrote the deed. Mr. Spalding, who took Mrs. Cornett's acknowledgment to the deed, stated that when the deed was signed and acknowledged, there was no one present except Mrs. Cornett, the attorney and himself, though, when he went into the room, another lady and gentleman were there. S. A. Russell, the attorney who drew the deed, testified as follows: Mrs. Cornett told him she wanted to give what little property she had to her daughter, as the latter had been a perfect slave to her. Later on he got a letter from her and he dictated the deed. The same day, or the day following, he and Mr. Spalding drove out to Mrs. Cornett's. Mrs. Cornett was standing in the door. He went in and talked for a while and read the deed over. Mrs. Cornett stated that it suited her exactly. He then went to the door and called Mr. Spalding, who was in the automobile. Neither Mrs. Tucker nor Mr. Tucker was in there when the deed was read over to Mrs. Cornett, or when she signed and acknowledged it. He did not recall that either of them was in there until about the time he started to the door. When he started to leave, he saw Mrs. Tucker at the back door. She had been washing and had her sleeves rolled up. After getting outside he saw Mr. Tucker and went and talked to him. M. L. Longmire testified that Mrs. Cornett's mind was good. She seemed to be a bright woman. From what he knew of her, he thought she could take care of herself. He never saw any dictation on the part of Mrs. Tucker, but had heard Mrs. Tucker and her husband advise Mrs. Cornett about matters. Such transactions which he had with Mrs. Cornett were through Mr. Tucker, who, it seems, was running the farm. Dr. J. C. Beard, Mrs. Cornett's family physician, testified to the fact that Mrs. Tucker nursed her mother. He further stated that Mrs. Cornett's mind was good and that she was a positive character.

For the plaintiffs, Mrs. Angell testified that when the family started to move to Marion county, Mrs. Tucker told her mother not to come unless her father would make the children safe in a home, and the deed to the farm was made as Mrs. Tucker demanded. While witness lived at

home she did a great part of the work.    When she married, Mrs. Tucker was not present and cursed and abused her husband.    Mrs. Tucker cut up terribly and her mother couldn't do anything to make her behave.    She had some household goods and her mother told Mrs. Tucker to get some sheets and bolster slips.    Her sister selected the worst things in the house.    She and her sister had purchased some dishes together, and when she went to leave her sister wouldn't let her have her half unless she would pay for all of them.    On one occasion her father gave her a cow to sell, but her sister said, ''No, you will not sell her.    There isn't going to be a cow sold.    I'll be damned if I don't see to that.''    She also related other circumstances tending to show the domineering character of Mrs. Tucker.    Once she made a visit to her mother and her sister told her it was quite a busy time to run in and make a visit.    Her mother told her that she had received very bad treatment from Sarah, and when witness was at the house the treatment was worse.    Witness    lived    in Laurel county, and her sister didn't advise   her   of   her mother's death.    On cross-examination she stated that she and her sister never got along well together, and that her sister dictated the policies of the family.    Her sister was a regular tyrant with her mother.    G. B. Angell testified that he went to Mrs. Cornett's on one occasion to get some papers to be used in a suit.    Mrs. Cornett told him that the papers were in a trunk, but that Sarah would not let her have the key, but not to say a word about it. He further stated that he was present on one occasion when Mrs. Cornett gave a deposition, and that before she would answer, she would turn to see if Sarah nodded her head.    When this occurred, the attorney would repeatedly object.    Miss Black, who lived at London, testified that on one occasion Mrs. Cornett came to her home and asked her to call Mrs. Angell who lived out in the country. Mrs. Cornett told her to tell Mrs. Angell that she wanted to see her and the children, but that she could not go out then, but would have to come back in the summer as she promised her daughter, Sarah, to come home at a certain time.    On the same occasion Mrs. Cornett tried to talk to Mrs. Angell over the telephone, but when she heard the latter's voice she broke down and couldn't talk.    J. W. Benge testified that he heard Mrs. Cornett say she intended for Warnie (Mrs. Angell) to have her part of her estate.    Albert Tungate testified that he worked on Mrs.

Cornett's place for a while. During that time Mrs. Tucker had control of the operation of the farm, directed him what to do and settled for everything. Mrs. Cornett had nothing to do with the place. Mrs. Cornett told him that she would like mighty well to see Warnie. William Hasty testified that he had heard Mrs. Cornett say she had one daughter that he had never seen, that it had been a right smart while since she had seen her, and that she had never seen any of her children. She further stated that she would like to see them, and that she had no preference among her children. Mrs. Walker Gribbins stated that she was present about the time Mrs. Cornett's husband died. Issac Cornett asked Mrs. Tucker if she had notified the Angells, whereupon Mrs. Tucker said that she didn't know if the Angells or those fools would be at home. Walker Gribbins testified that Mrs. Cornett said to him that she would like very much to see Mrs. Angell's children.

In rebuttal Mrs. Tucker denied the various circumstances detailed by Mrs. Angell. Though she had cursed at times, she did not curse on the occasions referred to by her sister. She further stated that she had never refused to let any one have the trunk key to get papers, as her mother carried the key and kept her own papers.

The court did not err in placing the burden of proof upon the defendants. Mrs. Cornett was seventy-one years of age when the deed was made. Mrs. Tucker and her husband had lived with her for several years. The other children had gone away to establish homes for themselves. The relationship between the mother and daughter was of a very close and confidential character. Where, under circumstances like these, the mother transfers all of her property to her daughter and her daughter's husband, when there are others who have an equal claim on her bounty, the law looks with suspicion upon the transaction, and casts upon the grantee or donee the burden of showing that the transaction was freely and voluntarily entered into, and devoid of any vice that would render it inequitable or unfair. Miller v. Taylor, 165 Ky. 463, 177 S. W. 247. Nor does the fact that the deed was executed in consideration of the grantees' agreement to support and take care of the grantor during her life, and give her decent burial at her death, change the rule. It is not claimed that the Tuckers intended to move elsewhere but were induced to remain by the con-

veyance.   In addition to owning a life estate in the farm, which was a valuable one, Mrs. Cornett owned a large amount of personal property.   It will thus be seen that her estate was amply sufficient for all her wants, and that she was in no way dependent on the Tuckers for support. Under these circumstances the Tuckers were  the  real beneficiaries of the arrangement, and their agreement to support Mrs. Cornett and pay her funeral expenses will not be regarded as a valuable consideration sufficient to relieve them of the burden of showing the fairness of the transaction.   Davidson v. Davidson, 180 Ky. 190, 202 S. W. 493.

The chief complaint of appellants is that the verdict is not supported by the evidence.   There are many circumstances tending to show that Mrs. Tucker was  the dominant character in the household and controlled the family policies.   When her sister visited in the home, she made her feel that she was not wanted, and never even let her know of her mother's illness and death.   Her influence over her mother is shown by the fact that when her mother was giving her deposition in a certain case, her mother would not answer until she nodded her head to indicate what the answer should be.   On the whole, the evidence given by the Tuckers to rebut the presumption of undue influence is not very convincing.   Though living in the house with Mrs. Cornett, and though the deed was put to record a day or two after it was executed, they both claim that they did not know of her purpose to make the deed, or of the fact that the deed was  made,  until several weeks after its execution.   It is  by  no  means probable that Mrs. Cornett would have made the deed in consideration of the Tuckers' agreement to support and take care of her, unless the Tuckers had agreed to the arrangement.   Considering the case in the light of all the circumstances, and particularly in the light of the rule that the burden was on the Tuckers to show the fairness of the transaction, we are not prepared to say that the verdict is not sustained by the evidence.

Judgment affirmed.