## Slone, et al. v. Johnson, et al.

(Decided November 29, 1921.)

### Appeal from Floyd Circuit Court.

1. Pleading—Practice—When Answer May be Filed in Open Court.—
The provisions of the Code prescribing the time within which a
defense must be made in order to avoid a judgment by default do
not limit the power of a court to permit an answer to be filed in
court at any time before it is due.

2. Pleading—Answer—Sufficiency—Waiver.—Though some of the de-
nials in an answer may not be sufficiently definite and specific,
yet where there was no demurrer nor motion to make more spe-
cific, plaintiffs cannot complain of such technical defects after
evidence has been heard on the issues made, the case tried on its
merits and judgment rendered for defendants.

3. Appeal and Error—Deeds—Cancellation—Fraud and Undue Influ-
ence—Finding of Chancellor—Sufficiency of Evidence.—Evidence
in an action to set aside a deed on the ground of fraud and undue
influence held to sustain the finding of the chancellor in favor of
defendants.

HAMILTON & WALLEN for appellants.

A. J. MAY, WILLIAMS & JAMES, EDGAR PENDLETON and
EDWARD L. ALLEN for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Zachariah Johnson, a resident of Floyd county, died
intestate during the month of August, 1919. He was sur-
vived by five children, Nancy J. Slone, Julia Bingham,
Emma Stephens, Joseph Johnson and L. M. Johnson.
About four years prior to his death he conveyed his farm,
located in Floyd county and consisting of about one hun-
dred acres, to his two sons, Joseph Johnson and L. M.
Johnson. Prior to that time he had sold off half the tim-
ber and all the minerals underlying the farm. The deed
to his two sons acknowledged a consideration of $100.00,
half of which was paid by each of the grantees. The deed
contained the following provisions:

"It is, however, expressly understood that there is
one acre, including the house where grantor now lives,
excluded from this conveyance and not conveyed to gran-
tees herein, so long as grantor lives, but after said
grantor's death, the acre excluded is to go to grantees
herein. The grantor reserves the right in this convey-
ance to control the whole of said land so long as he lives,

then, the fee simple title to the whole tract, including the one acre, is to fall to the said L. M. Johnson and Joseph Johnson, their heirs and assigns forever. The grantees are also to take care of the grantor during his natural life by furnishing food, clothes and other necessaries of life, in case they cultivate and have the use of said land.''

After the death of Zachariah Johnson the three daughters brought suit against their brothers to cancel the deed on the ground of mental incapacity, fraud and undue influence. The defendants filed an answer denying the allegations of the petition. On final hearing the chancellor denied plaintiffs the relief prayed for, and they appeal.

The evidence for plaintiffs is as follows: Julia Bingham testified that she was on good terms with her father, and that her financial condition was bad. She knew of no reason why her father should have disinherited her by deeding all the land to defendants. The condition of her father's health was pretty bad, although he was able to get about and do some work. Her father was an unlearned man and her brothers were young, active men, in good health, and Lem had a good education. It did not cost very much to keep her father. Jasper Slone, husband of Nancy J. Slone, testified that the condition of Zachariah Johnson's health on September 4, 1915, was pretty bad. He was not particularly acquainted with the price of land in that vicinity, but was of the opinion that it was worth from $50.00 to $100.00 per acre. On being asked if Joe Johnson or Lem Johnson had any influence with their father, he replied: ''Yes, sir, it seems that they did.'' He further stated that Zachariah Johnson, when he had any business to transact, relied on the defendants. Lem Johnson and Joe Johnson were both strong, intelligent men. Bee Johnson deposed that the timber and land together were worth about $1,200.00. Joe Johnson and Lem Johnson were both strong, intelligent men. On cross-examination he stated that the health of Zachariah Jonson was tolerably good on September 4, 1915, the day the deed was executed. He never at any time knew of Zachariah Johnson's being unable to transact his own business and to take care of it. Considering the fact that the minerals and half the timber had been sold, he was of the opinion that the land was worth about $400.00. Joseph N. Harris, clerk of the Floyd county court, stated that he wrote the deed and took the acknowledgment. Zachariah Johnson asked him to write the

deed and told him how he wanted it written. He wrote the deed according to Zachariah Johnson's directions, then read it over to him and Zachariah Johnson said he was satisfied with it. Zachariah Johnson seemed to know and understand the nature of the transaction and told him in an intelligent way what he wanted done. Malcolm Hubbard testified that at the time the deed was executed Zachariah Johnson was getting old. The land was worth about $12.00 per acre. The defendants were both active and intelligent men. Zachariah Johnson was an uneducated man, but he was a mighty good citizen. He had a little bit of a queer turn but he could not say that his mind was affected.

On the other hand, Joseph Johnson testified that, at the time the deed was made, he was living with his father. His father had no mental infirmity when the deed was made. The deed was written by Joe Hargis at his father's direction. Neither he nor his brother suggested or attempted to influence their father to make the deed. His father was an active and alert man. Harris wrote the description in the deed from his father's dictation. He and his brother, Lem, each paid their father $50.00. He and his brother were also to take care of their father and give him all the necessities of life. This they did. On cross-examination he stated that he sold his half interest in the farm to his brother for $650.00 Each of the plaintiffs had farms on which to support themselves. During the last few years of his life, his father was engaged in truck gardening and was able to bring his produce to the market. The evidence of Lem Johnson was substantially the same as that of his brother. His father was about sixty-three years old when he died. He and his brother were liable for their father's support, and upon his father's death his funeral expenses, amounting to $105.50, were charged to them. He paid $650.00 for his brother's half of the farm, but that was a high price. He paid this sum because he wanted to live there. Vincent Whitaker testified that the farm in question was awfully rough. He was acquainted with Zachariah Johnson at the time the deed was executed, and his mental condition was good. Zachariah Johnson drove a wagon carrying watermelons to town, and he knew how to attend to business transactions. He never saw anything in his conduct or manner to indicate that he was not able to take care of himself in a business matter.

The first point made is that the court erred in dismissing the petition because no answer was ever legally filed by defendants. In support of this position it is argued that there are only three occasions when an answer in an equity case may be filed. One is on the third day of the term after the defendants had been served with process, section 102, Civil Code; another is in vacation when the answer may be filed in the clerk's office with notice to the adverse party, section 108, Civil Code; and the third is on rule day which is the first Monday in each month, section 367a-1, Civil Code; and as defendants' answer was filed on the first day of the term, it was not filed at a time authorized by the Code. The foregoing provisions merely prescribe the time within which defense must be made in order to avoid a judgment by default. They do not limit the power of a court to permit an answer to be filed in court at any time before it is due.

It is also insisted that some of the denials contained in the answer are not sufficiently definite and specific. While this may be true, yet as there was no demurrer nor motion to make more specific, and evidence was heard on the issues made, and the case was tried on its merits and judgment rendered in favor of defendants, plaintiffs cannot now complain of such technical defects in the answer. Clark v. Isaacs, 182 Ky. 391, 206 S. W. 606.

Another contention is that the finding of the chancellor is not sustained by the evidence. In support of this position it is argued that the confidential relations existing between the parties, considered in the light of evidence that the grantor was old and infirm and lived with the grantees who were active and intelligent men, and the consideration for the conveyance was inadequate, imposed on the grantees the burden of showing the fairness of the transaction. Even if it be conceded that the evidence offered by the plaintiffs on these points was sufficient to raise the presumption of undue influence, it seems to us that the evidence, considered as a whole, was sufficient to rebut this presumption. Though some of the witnesses for plaintiffs spoke of the grantor as being old and feeble, the fact is, he was only fifty-nine years of age when the deed was executed and had sufficient physical strength to gather produce and frequently drive a farm wagon containing such produce over a mountain road to Prestonsburg and back, a distance of from fourteen to sixteen miles. Furthermore, there was no evidence of

mental incapacity on the part of the grantor. On the contrary, it appears that he was a man of strong character and fair intelligence who directed his own affairs, and knew how to take care of himself in any business transaction. When he went to Prestonsburg to execute the deed, he not only told the clerk what he wanted done, but dictated the provisions of the deed. The land was of but little value, due to the fact that all of the minerals and half the timber had been sold. Not only was the cash consideration of $100.00 paid, but the grantor retained a life estate in the entire property, with the further provision that the grantees should support him in case they cultivated and used the land. While it is evident that he wanted his sons to have the land at his death, these provisions confirm the view that he knew how to take care of himself by providing for his comfort and support during his lifetime. We therefore conclude that the evidence supports the finding of the chancellor.

Judgment affirmed.