## Jasper, et al. v. Compton, et al.

(Decided January 27, 1922.)

### Appeal from Pulaski Circuit Court.

Appeal and Error—Findings—Undue Influence.—Evidence examined and held to sustain the judgment of the chancellor on the is-

sue of undue influence alleged to have been exercised in the execution of a deed and the making of a will.

E. T. WESLEY for appellants.

J. W. COLYAR and W. M. CATRON for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

In 1918 Tyler Jasper died a resident of Pulaski county, aged seventy-three years. In his early manhood he had married and lived most of his life at Mintonville, in Casey county.

He and his first wife had five children, all of whom were grown and had left the parental home prior to their mother's death in 1904. In a modest way he had been prosperous and, as he claimed, had helped each of his children in the establishment of a home.

Shortly after the death of his first wife one of his children went to the old home and lived with him for about a year and then moved away, and thereafter he lived alone for about a year when he married the widow Combest, a woman past fifty years of age, he at the time being about sixty.

His children were opposed to his marrying the second time, and at least part of them thereafter resented it rather pointedly, out of which grew some considerable friction between the stepmother and part of the children, in which bad feeling the father and husband inevitably became ultimately involved. Naturally, under such conditions, his attitude toward and intercourse with his children underwent a change, and while on the surface their relations were more or less friendly, it is apparent from the evidence that they were at the same time strained. He was a country storekeeper and postmaster for a number of years and owned in the neighborhood a small tract or two of land of no great value.

These unpleasant relations between him and his wife and some of his children continued from the date of the marriage in 1906 until 1913, at which time he executed a will by the terms of which he gave to his wife twelve shares of bank stock, all of his household and kitchen furniture, one horse and buggy if on hand at his death, and in addition he gave her for her life, or as long as she remained single, the use and benefit of all of his lands,

but made no disposition of the remainder interest in his lands. Some time thereafter he sold part of his lands and sold his store to one of his sons, but the record does not satisfactorily disclose what became of the proceeds of these sales and does not show with any degree of certainty whether or not he was at that time in debt to any great extent.

In 1916 it is disclosed in the evidence that he made up his mind to sell all of his property at Mintonville and remove some twenty miles away to a point in Pulaski county in order to avoid and get away from, as far as possible, the unpleasantness growing out of the friction that had arisen between him and his wife and his children. Accordingly he did sell the Mintonville property and bought a small place of about seven acres in Pulaski county, upon which he erected a comfortable home and had the same deeded to his wife. The second wife lived only about a year after they moved to Pulaski county and died there in 1917, and he, too, continued to live there and died in the year 1918.

In October, 1918, his four surviving children and the child of one of his deceased sons instituted this equitable action in the Pulaski circuit court wherein they first only sought to set aside the deed made to his second wife to the Pulaski county property upon the sole ground that she had procured him to have the same done by her undue influence. Thereafter, however, in the same action an amendment was filed seeking also to set aside his will made in 1913, upon the same grounds, although his will had theretofore been probated in the Pulaski county court.

The answer is only a traverse, there being no question raised or made either in the trial court or in this court as to the propriety of impeaching or setting aside in an equitable action a probated will upon such a ground.

The trial court upon a final submission dismissed the petition of the plaintiffs and adjudged the will to be the last will and testament of Tyler Jasper and quieted title of his second wife's devisees to the lot of land in question and the plaintiffs have appealed. The pleadings do not charge mental incapacity and the evidence shows he was of sound mind and not easily influenced.

The question presented is purely one of fact and there is no tangible evidence in the record of any act or conduct of the second wife showing she exercised any improper influence upon her husband either in the execution of the

will or of the deed in question. The most that can be said is that she, being his wife and intimately associated with him in that relation, had the opportunity to have attempted to exercise such influence, but, so far as the evidence goes, the only influence she actually exercised grew out of and came from her kind, considerate and wifely treatment of him during their marriage. The evidence satisfactorily shows she was a model wife for persons in their station; that she did most, if not all, of the housework, and often when he was not well did rougher jobs than are ordinarily to be expected of a woman in order that he would not have them to do.

The chief complaint of appellants is that after Tyler Jasper's marriage to his second wife his attitude on moral questions changed; that before such marriage he was an ardent temperance advocate and made temperance speeches, and that before that time he was a regular and consistent attendant upon church and Sunday school, but that thereafter his attitude upon these moral questions changed and he became, under her influence, a consumer of intoxicating liquors and did not attend his church and Sunday school as regularly as he had theretofore done.

The evidence, however, for the defendants shows that in the latter years of his life, during his second marriage, his health at times was by no means good, and he suffered from asthma and kindred complaints, and that his wife did generally keep in the home a little whiskey and he used it in a moderate way to alleviate his sufferings. The evidence further shows that during those latter years there was much of the time when, even if he was physically able to go to church and Sunday school, he did not feel quite equal to it, but that he went whenever his health would justify it.

Without going into the evidence further it is sufficient to say that it fully justifies the finding of fact by the chancellor that no undue influence was exercised, and surely in the light of the kind and considerate treatment which he received from his second wife in his declining years, it cannot be regarded as unjust or unnatural that he should have made ample provision for her.

Judgment affirmed.