## Roberts, et al. v. Owens, et al.

## Roberts, et al. v. Phelps.

(Decided March 16, 1926.)

### Appeals from Calloway Circuit Court.

1. Evidence—Evidence, by Lay Witnesses, Relative to Mental Capacity of Deceased, Held Not to Prove or Afford Basis for Opinion that he was Mentally Incapable of Making Contract or Deed.—In action to set aside contract and deed, evidence, given by lay witnesses, relative to mental capacity of deceased to execute deed or contract, held not to prove or even afford basis for opinion that he was incapable mentally of understanding and appreciating nature and effect of making contract or deed.

2. Deeds.—Inadequacy of price is not alone sufficient to justify setting aside conveyance, alleged to have been made by grantor mentally incapacitated.

3. Deeds.—Chancellor's finding that deceased, at time of making deed and contract for his support, was mentally competent, held supported by evidence.

4. Appeal and Error.—Court of Appeals is not authorized to disturb chancellor's finding supported by preponderance of proof.

COLEMAN & LANCASTER for appellants.

J. C. SPEIGHT for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

These two actions were commenced by Sarah M. Roberts and others, collateral kin of W. W. Ayres, deceased, in the Calloway circuit court to have a written contract made between deceased, W. W. Ayres, and appellee, W. A. Owens, and a deed made by Ayres to appellee, Phelps, set aside and adjudged invalid on the ground that Ayres at the time of making the contract and the deed was not mentally capable of understanding and appreciating the nature and effect of these instruments, and on the further ground that he was unduly influenced to enter into the contract and make the deed, and the contract and deed were, therefore, of no effect. The deed sought to be cancelled bears date of November 22, 1921, and reads as follows:

"This indenture witnesseth: That W. W. Ayres, single, for and in consideration of nine hundred dollars ($900.00), evidenced by notes, three notes executed by grantee to grantor for $300.00, each due in one, two and three years respectively, with interest at 6% per annum from date until paid, to secure the payment of same which a lien is retained on the land herein conveyed, hath sold and does hereby convey unto T. A. Phelps, the following described tract of land in Calloway County, Ky.: 'The west half of the northwest quarter of section 31, R. 3 R. 6 east, except 20 acres conveyed heretofore out of the northeast corner of said half quarter.' Said Ayres obtained title to same by deed from W. P. Hay recorded in deed book 3, page 550, office of the clerk of Calloway county court.

"To have and to hold the said T. A. Phelps, his heirs and assigns forever with general warranty.

"The post office address of grantor is Almo, route 1, Calloway county. This 22nd day of November, 1921."

The contract which bears date December 5, 1921, and signed by W. W. Ayres and appellee, W. A. Owens, reads as follows:

"The said W. A. Owens agrees to take to his home W. W. Ayres at once upon the acceptance of this contract and support him the balance of his life; that is, feed, clothe, lodge and provide sufficient medical attention, and to give him all needful care and attention in sickness and in health and to see to it that he is carefully nursed in sickness as long as said W. W. Ayres lives, his age and condition in life considered, and at his death he to give him a suitable burial in the Friendship graveyard by the side of his wife who is now buried there, and to have the tombstone placed there now properly lettered and for all of which service the said W. W. Ayres delivers to or pays to W. A. Owens, the sum in principal and interest of four land notes, three of which are for three hundred dollars each and one for two hundred dollars, said notes are to be assigned over by the said W. W. Ayres at once upon the completion of this contract, and the said W. W. Ayres also delivers or pays to W. A. Owens at once upon the acceptance of this contract about $785.00, in cash, a part of which W. W. Ayers now has in his possession and the balance is on deposit in the first National Bank of Murray, Kentucky. W. W. Ayers is now drawing a pension of twelve dollars per month, of which the said Owen is to have no control or possession, the same is to continue to be drawn and collected by W. W. Ayers to be done with by him as he pleases but whatever of same that comes after his death or that he has on hand after his death is to go and belong to W. A. Owens. In the case said Owens fails to live up to his contract same shall become null and void."

By stipulation it was agreed that the depositions taken by each party could be read and considered as evidence in each of the cases, and the trial court so considered the record in arriving at its judgment, dismissing both petitions. From this judgment Sarah M. Roberts and her associates appeal.

The answers of appellee, Owens and Phelps, denied that Ayers was on the 22nd day of November, 1921, the date of the deed, or on the 5th day of December, 1921, the date of the making of the.contract, mentally incapable of attending to his business and of making the deed or the contract mentioned in the two petitions, and denied that he was overreached or unduly persuaded or influenced to make either of the writings. Further pleading Owens averred in the answer that he had faithfully carried out and performed the undertaking expressed in the contract by supporting Ayers until his death; that he had fed, clothed, lodged and provided medical attention for Ayers and gave him "all needful care and attention in sickness and in health and saw to it that he was carefully nursed in sickness, and that at his death the defendant gave to the decedent a suitable burial in the Friendship graveyard beside the decedent's wife, and defendant has procured and placed a tombstone and properly lettered it and observed and performed fully and completely every undertaking as expressed in said contract."

Affirmatively pleading appellee, Phelps, averred that at the time of the execution of the deed Ayers was about ninety years of age but of sound mind and capable of attending to any character of business and of making a deed. The pleadings made a sharp issue upon two questions: (a) the mental capacity, and (b) the free agency of Ayers in making the deed and contract. The plaintiffs, now appellants, asserted that the deceased, Ayers, was so old and infirm in body and mind as to be incapable of making a deed or contract, while appellees, Owens and Phelps, denied that he was so infirm either in mind or body as to incapacitate him to enter into a contract or make a deed. Appellants, as plaintiffs, called thirteen (13) witnesses to prove the mental incapacity of Ayers. Of these thirteen witnesses, three were physicians. All were acquainted with Ayers in his lifetime and one or more of the physicians had attended him in sickness. The lay witnesses as well as the physicians expressed the opinion that Ayers was not mentally capable of understanding and appreciating the nature, character and extent of the written contract made by him with appellee, Owens, and was likewise unable to understand the nature, character and extent of the deed which he made to appellee, Phelps, but the reasons assigned by the lay witnesses for the formation and entertainment of the

opinion that he was incapable of making a deed or contract are seemingly wholly insufficient to support the opinion expressed. For instance, most of them stated that Mr. Ayers who was past ninety (90) years of age and dim of sight was unable to recognize them when they went to see him at his home or met him at church or other places, and would often ask their names before he would begin a conversation with them, clearly indicating, as the witnesses stated, that he did not know them, or at least did not recognize them until told who they were. They further gave as a reason for their opinion that the memory of Ayers was poor; that he could not remember things that had happened only recently, while he constantly talked about things that took place years before when he was a member of the General Assembly of Kentucky or a member of the Constitutional Convention of Kentucky. This evidence would apply with equal force to most persons ninety years of age and does not, it seems to us, prove or even afford a basis for an opinion that one so affected is incapable mentally of understanding and appreciating the nature and effect of a contract or deed which he is making concerning his own property. Many persons of the age of Ayres delight to talk of the happenings of their early life and men who have been in public life, as was Ayers, continue when they are old to talk about incidents which happened when they were younger and in public life. Likewise they remember early incidents more clearly than they do things which took place later when they have grown older. In other words, the young mind is more easily impressed and the impression made is more lasting than that received in later years but this does not prove that the mental faculties or powers of reasoning have departed so that the possessor is a person who is mentally incapable of knowing his property or its value or of apreciating the nature and extent of a contract or deed respecting his property into which he has deliberately entered. The three physicians who testified for appellants expressed the opinion that Ayers was not of such mental capacity as to be able to understand the nature of a contract or deed, such as the ones involved in this action. One of them was asked:

"Q. Did you know Captain W. W. Ayers, in his lifetime? A. Yes sir, ever since I have known anybody.

"Q. How near did you reside to where he lived? A. About a mile part of the time, and since his wife died, I don't remember the date, lived something like one-fourth of a mile from me.

"Q. During that time and the time you have practiced medicine, did you ever attend Captain Ayers? A. Yes, sir, done all his practice up until something like seven or eight months before he died.

"Q. Do you think you were acquainted with his mental condition on the 22nd day of November and the 5th of December, 1921? A. Well, I don't know so much about him from the time he left there and went to Mr. Jones', I didn't see him so much then, I don't remember the dates, but I reckon I did.

"Q. Did you see him while he lived at Mr. Johnny Caraway's? A. Yes, sir, often, every day or so.

"Q. What was the condition of his mind at that time? A. Well, in some ways good and some bad.

"Q. Do you think, at that time, doctor, he had enough mind to know the objects of his bounty and to understand what it meant to trade and sell real estate? A. No sir, I think not.

"Q. How long do you think it had been since he had had sufficient mind to understand this kind of deal? A. That is a hard question to answer, I don't know, several years though; I don't think any man 90 years old is capable of doing that kind of business."

The evidence of the other physicians was not quite so strong as the one from which we have copied. His testimony shows clearly that his opinion is largely based upon the age of Ayers. He frankly says he does not think any man ninety years of age is capable of transacting business such as making contracts or deeds, but he does not point out any real good or substantial reason why he so believes or why Ayers was not capable of understanding the contract and deed made with appellees, Owens and Phelps. A greater number of witnesses testified for appellees, Phelps and Owens, saying in substance that they were well acquainted with Ayers in his lifetime, some of them for a great number of years and others for a shorter period next before his death, and that they believed him to be a man of clear, strong mind

and to have sufficient ability to transact such business as the making of a deed or a contract like the ones involved in this litigation. Appellees introduced the lawyers who drew the contract and deed and each, speaking for himself, stated that they were acquainted with Ayers and had been for some years before they prepared the papers and that Ayers was at the time of the making of the contract and the making of the deed, of sound mind and entirely capable of understanding a deed or contract, and understood the nature and extent of the contract and of the deed. The attorney who drew the deed stated that appellee, Phelps, and the deceased, Ayers, instructed him to draw the deed and he went to his office for the purpose of preparing the deed, leaving Ayers at a store in town. Appellee, Phelps, accompanied the lawyers and was present when the deed was prepared and suggested to the lawyer who drew the deed that there should be no interest on the deferred payments, represented by notes, and the lawyers so prepared the deed, although they had been instructed by Ayers to prepare it otherwise. When he took the deed to the store where Ayers was to read it to him and did read it to him, Ayers immediately raised the point that there was no provision in the deed for interest on the deferred payments and after arguing with Phelps, prevailed upon Phelps to let the notes draw interest, and the deed was corrected in accordance with the wishes of Ayers. There was another small correction which Ayers suggested in the deed and which was to his advantage, and it was also made. The other attorney testified that the contract was prepared in accordance with the specific instructions given by Ayers. Appellees called Dr. D. B. Hays, who testified that he waited on Ayers during his last sickness and up to his death. He further stated that he had known Mr. Ayers nearly all the doctor's life and that he began to treat him about four months before he died. "Q. Please state what the mental condition of W. W. Ayers was as you knew him the last year of his life and what was it just prior to his death? Please state fully?" To which question the doctor answered, "When I first saw him he was suffering considerably with insomnia and some attacks of epilepsy, these attacks, as I remember, coming on about once a week, I gave him treatment and these attacks of epilepsy, together with the insomnia, was relieved for probably eight or ten weeks; after that time the epilepsy spells returned and that was when his

mental condition began to fail.   I can state that the first month or so that I treated him his mind was apparently clear on everything, he being able to converse with me freely about the things that happened fifteen, twenty and thirty years before, and, to my knowledge, accurately.   The last month just prior to his death he practically had no mind.''

Many of the associates and friends of Ayers who knew him intimately up to the time of his death testified that he was a man of strong mind up to a short time before his death; that he understood business and carried on business as a business man; that he was able to take care of himself in business transactions and that they did not observe any weakening of his mental faculties until long after the making of the contract and deed, which are involved in this litigation. The preponderance of the evidence upon this subject as well as upon the subject of free agency on the part of Ayers in the making of the contract and deed was upon the side of appellees. The chancellor so held and we see no reason for disturbing his finding.

There was absolutely no evidence introduced tending to show that either the contract or the deed was procured by appellees, or either of them, by the exercise of undue influence over Ayers, but on the contrary the evidence shows conclusively that Ayers sought out Phelps and sold him the land and made the deed and also sought out Owens and made the written contract for the support and maintenance of himself.   The land undoubtedly was worth more than $1,200.00, the price for which Ayers sold it, but we have frequently held that inadequacy of price in cases like this is not alone sufficient to justify the setting aside of a conveyance. Clay v. Clay's Committee, et al., 179 Ky. 494; Dotson v. Norman, 159 Ky. 786; Stump v. Martin, 9 Bush 285; Wallace v. Marshall, 9 B. M. 148; McKinney v. Crady, 8 Ky. Law Rep. 259.

As we read and understand the evidence the finding of the chancellor is supported by a preponderance of the proof.   In such case we are not authorized to disturb his judgment. The court is of opinion that the chancellor did not err in dismissing appellant's two petitions.

Judgment affirmed.