## Gregg v. Hedges' Guardian et al.

(Decided June 27, 1928.)

TALBOTT & WHITLEY for appellant.

DENIS DUNDON for appellees.

GENE LAIR, Guardian ad litem.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

This is an action to set aside a deed on the grounds of undue influence and mental incapacity.

John W. Jameson made the deed in question to his daughter, June Jameson Gregg, conveying real property in Paris, Ky. It was attacked by another daughter and four grandchildren, descendants of deceased daughters, some of whom were infants, and the chancellor canceled the conveyance. Mrs. Gregg has appealed, insisting that the deed was valid.

It appears that John W. Jameson was a widower about 81 years old, and the appellant had lived with him for about 2 years, keeping house for him and looking

after him. He was a veterinary surgeon and pursued the practice of his profession until the beginning of his last illness, which was of short duration. The deed was executed and recorded on April 23, 1926, and early the next morning the doctor died. There is evidence that he was in a dying condition before he made the deed, and was so far gone that he was not mentally competent to make a deed. It was shown by a number of witnesses that Dr. Jameson was a man of strong will and firm mind when well, and showed no partiality among his children or grandchildren. There is other testimony to the effect that he had become estranged from his daughter, Mrs. Rumpler, and had expressed on two occasions, at least, that he intended to give his property to Mrs. Gregg. It is shown that Mrs. Gregg entertained a hostile feeling toward her sister, Mrs. Rumpler, and had an aversion to Walter Hedges, her brother-in-law and father of the two Hedges children. Before the death of Mrs. Hedges, she and her husband had lived with Dr. Jameson, and after her death Mr. Hedges and the two children remained there until requested by Dr. Jameson to leave. The attitude of the doctor towards Mrs. Rumpler and Mr. Hedges had been cordial until the appellant came to live with him. It thus appears that he developed a hostile attitude towards the very relatives that the appellant disliked. It is clearly inferable from the proof that these late aversions of Dr. Jameson were instigated, or at least inspired, by Mrs. Gregg. It is also shown that Mrs. Gregg had Dr. Jameson to sign papers transferring to her all of his insurance, but when the matter was explained to him he said that such was not his wish. Yet he did transfer to her one paid-up policy of $1,500 which he considered would compensate her for what she had done for him. She took her father on long trips in her automobile, and for months before his death she was practically alone with him and in his full confidence. When she learned of the seriousness of his last illness, she had an attorney prepare the deed in question, arranged for the attendance of a notary public and two witnesses, and obtained the opinion of the attending physician that her father was yet capable of making a deed. The physician testified that his opinion was predicated on the assumption that the making of the deed was but the execution of a fixed purpose formed when he was well and entertained for some time, but that it was doubtful whether he possessed, when the deed was made, the

power to originate and execute such a purpose. The transcript is large, consisting of several volumes, and the briefs are quite extensive. It would serve no useful purpose to detail all the facts and circumstances developed by the record, or discuss at length the various conflicting contentions. It is sufficient to say that there was substantial evidence to sustain the decree of the chancellor, and the preponderating effect thereof was not overthrown by the proof for appellant.

The relationship of the parties to the transaction, the proximity of the deed's execution to the death of the doctor, and the surrounding circumstances, cast upon the appellant the burden of showing that the deed to her was made at a time when the grantor had sufficient mental capacity to perform an act of such importance, and that in doing so he was free from undue influence on her part. Hoeb v. Maschinot, 140 Ky. 330, 131 S. W. 23; Shields v. Burge, 171 Ky. 149, 188 S. W. 321.

In McDowell v. Edwards, 156 Ky. 475, 161 S. W. 534, it was said:

"The law looks with suspicion upon the transfers of property by persons mentally or physically infirm to those having custody of them. Even when parties in good health stand in a confidential relation to each other, the burden is upon the stronger character who procures an advantage, to show that a transaction was fair; and relief will be afforded in equity in all such transactions in which influence has been acquired and abused, in which confidence has been reposed and betrayed. Allore v. Jewell, 94 U. S. 512 (24 L. Ed. 260). The relief stands upon the general principle applying to all the varieties of relations in which dominion may be exercised by one person over another."

Again, in Smith v. Snowden, 96 Ky. 32, 27 S. W. 855, 16 Ky. Law Rep. 353, the court said:

"In the case under consideration the grantors were old, ignorant and enfeebled by disease; the grantees were vigorous, aggressive and already in charge of the persons and the property of the grantors. We may say in general that when such a relation exists the person obtaining the benefit must show, by the clearest evidence, that the transaction

was freely and voluntarily entered into, and devoid of inquitable incidents.''

In Willoughby v. Reynolds, 182 Ky. 1, 205 S. W. 947, a like conclusion was reached upon the consideration of a case resembling to a marked degree the one now before us. See, also, Herzog v. Gipson, 170 Ky. 325, 185 S. W. 1119; Davidson v. Davidson, 180 Ky. 190, 202 S. W. 493; Gross v. Courtley, 161 Ky. 152, 170 S. W. 600; Tucker v. Cornett's Adm'r, 190 Ky. 786, 228 S. W. 428; Kelly v. Fields, 167 Ky. 796, 181 S. W. 657.

The reports abound with cases on the subject and there is no break in the current of authority to the effect established by the ones we have cited.

The appellant, however, insists that the judgment was wrong, and relies for a reversal upon the cases of James v. Cullins, 214 Ky. 179, 282 S. W. 1106; Rush v. Emery, 207 Ky. 382, 269 S. W. 305; Parker v. Archibald, 212 Ky. 567, 279 S. W. 979; Sykes v. Hurd, 195 Ky. 560, 242 S. W. 853; Quinn v. Hendren, 187 Ky. 283, 218 S. W. 1022; Bowles v. Harvey, 189 Ky. 598, 225 S. W. 367; Mahuron v. Mahuron, 208 Ky. 825, 271 S. W. 1093; Jasper v. Compton, 193 Ky. 519, 236 S. W. 965; Jones v. McEwen, 197 Ky. 462, 247 S. W. 359; Slone v. Johnson, 193 Ky. 72, 234 S. W. 970; Elston v. Elston, 207 Ky. 412, 269 S. W. 307; La Rue v. Williams, 211 Ky. 398, 277 S. W. 462; Creech v. Creech, 208 Ky. 845, 272 S. W. 36; Roberts v. Owens, 213 Ky. 580, 281 S. W. 525, and kindred cases. In all but two of the cases cited (James v. Cullins, and Creech v. Creech), the finding of the chancellor on conflicting evidence was upheld. These very cases afford excellent examples of the rule of appellate practice prevailing in this court in cases of this character. In addition to that important fact, the cases are so variant in facts and different in relations from the one now involved as to be readily distinguishable. In James v. Cullins, 214 Ky. 179, 282 S. W. 1106, the chancellor had called a jury to his aid, and had accepted its verdict. It was held by this court that he should have disregarded the advisory verdict of the jury and disposed of the case on the weight of the evidence, it being an equitable action. In the course of the opinion the court said:

''This is not a case in which the burden is upon the grantees, to show that there was no undue influence. The court has applied that rule where confidential relations existed, confidence was abused and

advantage taken of weakness. Smith v. Snowden, 96 Ky. 37 (27 S. W. 855, 16 Ky. Law Rep. 353). It is also applied as the rule between near relatives where the grantor was old and infirm and under the care and dependent upon the grantee to whom the deed was made. Hoeb v. Maschinot, 140 Ky. 330 (131 S. W. 23); Sword v. Fields, 192 Ky. 631 (234 S. W. 202); Gross v. Courtley, 161 Ky. 158 (170 S. W. 600). But it has refused to apply the rule in a case such as this. Shacklette v. Goodall, 151 Ky. 23 (151 S. W. 23). In this case James was a large, strong man, strong in will no less than in body. While his wife and daughter and her husband lived with him as one family, he was in law and in fact the head of the family. He managed his farms, made his contracts with his tenants and settled with them. He kept his money in bank and in every sense of the word managed his own business. While there was sufficient evidence of undue influence to take the case to the jury under the scintilla rule, to set aside this deed on the ground of undue influence would be for the court to shut its eyes to the truth and ignore the facts established by uncontradicted evidence. The deed, as shown by the undisputed proof, was the result of a settled purpose formed in the grantor's mind long before he came to Frankfort to have it drawn.''

It is thus made clear that the case is not in point on the present appeal. In Creech v. Creech, 208 Ky. 845, 272 S. W. 36, a husband, a few days before his death, had conveyed to his wife a small undivided interest in a tract of land. It was not sufficient to support his widow longer than a year or two at most. The judgment was reversed because the evidence as to the mental incapacity and undue influence was vague and of little probative value, affording no substantial support to the decree. The case is unlike this one, and furnishes no precedent for overturning the decision of the chancellor in this case.

If all the testimony left the judicial mind in doubt as to the true solution of the problem presented the finding of the chancellor would turn the balance in favor of upholding his judgment. But we entertain no doubt that the facts were accurately divined and the law correctly applied respecting the transaction involved in this record.

The judgment is affirmed.