## LaRue's Committee, et al. v. Williams.

(Decided November 24, 1925.)

### Appeal from Hickman Circuit Court.

1. Appeal and Error—Finding of Chancellor Not Disturbed where Evidence is Conflicting, Leaving Mind in Doubt as to Truth.— Where evidence is conflicting, and mind is left in doubt as to truth, finding of chancellor thereon will not be disturbed.

2. Deeds—Evidence Held to Support Judgment Dismissing Suit to Set Aside for Mental Incapacity and Undue Influence Conveyance to

Grantor's Foster Daughter.—In a suit by committee of grantor and her heirs to set aside, because grantor was of unsound mind, and because deed was procured by undue influence, a deed to grantor's foster daughter in consideration of latter's keeping grantor for remainder of her life, held that evidence supported judgment of chancellor dismissing petition.

3.   Deeds—Foster Daughter could Not be Deprived of Benefit of Contract to Keep Foster Mother in Return for Conveyance of Property by Son's Taking Mother Away from Her Care.—Where foster mother made conveyance of property to foster daughter in consideration of latter's keeping her for the balance of her life, foster daughter could not be deprived of benefit of such contract merely because grantor's son took mother away from care of grantee against latter's will and did not permit her to return.

BENNETT, ROBBINS & ROBBINS and L. HINDMAN for appellants.

J. D. VIA and F. B. MARTIN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

On April 18, 1922, Ludah M. LaRue conveyed to Lilly May Williams 500 acres of land on Wolf island in Hickman county. The consideration for the deed is thus stated in it:

> "The consideration for the foregoing conveyance is that the said Lilly May Williams has contracted to maintain the grantor herein during the rest of her life by furnishing to her a place of abode in the home of said grantee, boarding and clothing of the same kind and character which she, the said grantee, has for herself, and to defray the expenses of burial of the said grantor after her death; and for the further consideration of the love and affection which the said first party has for the said second party, who has long maintained the position of a foster child to said grantor."

In November, 1922, Mrs. LaRue was adjudged a person of unsound mind and R. W. Gray was appointed as her committee. On April 12, 1923, he filed this action to set aside the deed to Mrs. Williams on the ground that Mrs. LaRue was then a person of unsound mind and was induced to execute the deed by undue influence. The allegations of the petition were controverted by answer, proof was taken and on final hearing the court dismissed

the petition. Mrs. LaRue having died the committee and her heirs appeal.

The case presents merely a question of fact. It is the rule of this court not to disturb the finding of the chancellor on the facts where the evidence is conflicting and the mind is left in doubt as to the truth. The rule is largely based upon the fact that the chancellor is on the ground; he knows local conditions and more or less knows the witnesses and the value of their testimony.

Mrs. LaRue was about sixty-three years of age; she had two children, a son, Ivan, who lived in Mississippi, and a daughter, Sue Griggs, who lived in Arizona. Mrs. LaRue had all her life been a resident of Kentucky, but in the year 1920 she went to live with her son Ivan in Mississippi. She lived with Ivan until January, 1922, when she returned to Columbus, Kentucky, and went to the home of Mrs. Williams, who was her foster child. She had taken Mrs. Williams to rear when she was nine years old and Mrs. Williams lived with her until her marriage. She was much attached to her foster daughter, and in the following April, while living at the house of Mrs. Williams, she made the deed in contest. She had owned a large body of land, but had disposed of most of it. In the fall of 1922, Ivan conceived the idea of getting his mother to sell her remaining land. She did not do this and he came from Mississippi and a few weeks later had an inquest held and had his mother sent to the Western State Hospital. Mrs. Williams appeared at the inquest. She does not appear to have made objection to the proceeding, but she gave Ivan some money to pay the expenses of taking his mother to the hospital and offered to pay her expenses while there. Mrs. LaRue remained at the hospital four or five months. Mrs. Williams tried to get the superintendent to return the patient to her, but he declined to do so and delivered her to Ivan. Ivan took her to his house and then took her with him to Missouri, where she later died. The proof conclusively shows that Mrs. LaRue was an epileptic; that she had from time to time fits or convulsions and until she had gotten over one of these spells her mind was not right. But the testimony of the superintendent at the hospital, and of a number of disinterested people who knew her well, is to the effect that her mind was good in the intervals between the spells. The proof also shows that she consulted with some of her friends about making the deed before it was made, and then employed one of her friends to write the

deed, and when he didn't come telephoned to him to come the next day. All the persons connected with the making of the deed, including the clerk who took the acknowledgment, testify that she was thoroughly at herself at that time, and there is no evidence of any influence exerted by Mrs. Williams. While there is much evidence of strange things that she did and said at different times remote from the making of the deed, this evidence may be reconciled entirely with the evidence as to her good condition when the deed was made, it being conceded that she had these spells from time to time and during one of the spells acted queerly. She had had considerable property and had managed her affairs reasonably well, except in her dealings with her son, Ivan, which seem to have involved her in debt. The arrangement was not an improvident one; it met with the approval of Mrs. Griggs, the daughter in Arizona. No one could tell how long Mrs. LaRue would live. She needed a home and the tender attention that only love bestows. She wished to live with her foster daughter as she did not wish to live either in Arizona or in Mississippi. On the whole record the judgment of the chancellor is supported by the weight of the evidence.

It is earnestly maintained that in any view of the case Mrs. Williams should not have 500 acres of land for taking care of the old lady for ten months and that the court should have adjudged her at the utmost only compensation for taking care of the old lady for that time. But the deed must stand if Mrs. LaRue was competent to make it, and Mrs. Williams has complied with her part of it. The evidence conduces strongly to show that Ivan got up the inquest and took all the subsequent proceedings for the purpose of getting this deed set aside and later securing a sale of the land. Mrs. Williams wanted to pay the cost of the keeping of the old lady in the asylum and wanted to take her back to her house after she had been there a short time. Ivan wouldn't allow it and notified the superintendent not to allow her to return to Mrs. Williams or to be delivered to anybody but him, and finally went there and took her to his own house and would not permit her to return to Mrs. Williams. He could not by thus taking his mother away from Mrs. Williams against her will and consent deprive Mrs. Williams of the benefit of her contract. Mrs. Griggs didn't want it done. She wanted the deed to stand, as shown by her letter written at the time, and it would appear that Ivan was

the only one who wanted the deed set aside or break up the home of his mother with Mrs. Williams. He had his father-in-law, R. W. Gray, appointed as her committee; his course before the inquest and his course and his father-in-law's course after the inquest conduce to show that they had in mind Ivan's interest rather than his mother's.

On the whole case the judgment of the chancellor is in accord with the equity of the matter.

Judgment affirmed.