## Sutton et al. v. Cornwell et al.

(Decided Feb. 28, 1936.)

(As Modified on Denial of Rehearing March 5, 1937.)

A. F. BYRD and PATRICK & SUBLETT for appellant.

A. H. ALLEN and W. R. PRATER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Mrs. Susan Salyer Bailey was not successful in her

efforts to set aside a deed she and her husband had made and she appealed.

On February 28, 1936, the judgment was affirmed. Mrs. Bailey filed petition for rehearing. While case was pending on petition for rehearing it was discovered the service of the process, by which it was sought to bring the infant defendants, Marvin Burton and Jean Burton, before this court, was defective, and on November 9, 1936, the order of submission was set aside and alias process issued for these infants. After process was served on them a guardian ad litem was appointed for them in this court.

December 23, 1936, Mrs. Bailey died intestate survived by six children, to wit: Florence Sutton, Raney Arnett, Martha Conley Arnett, Mary Burton, George Salyer, and Arthur Salyer as her only heirs at law. And on February 5, 1937, this case was revived in the names of her children and of Clyde Sutton, administrator of Susan Salyer Bailey, against Eva Burton Cornwell and the infant appellees, Marvin Burton and Jean Burton, and the style of the appeal changed to that given in the caption hereof.

### The Facts.

Susan Salyer Bailey was formerly the wife of J. J. Salyer, who conveyed to her on September 1, 1894, 100 acres of land in Magoffin county. After the death of J. J. Salyer, his widow married one Pearl Bailey. We are advised in brief that Mrs. Bailey was contemplating the conveyance of this farm to her grandson, Kelly Burton, whereupon certain of her children instituted a proceeding to have a committee appointed for her, and the old lady defeated their efforts. Then an effort was made to set aside the deed of September 1, 1894, and the old lady was again successful.

October 22, 1928, she and her husband made a deed to Kelly Burton by which they conveyed this farm to him for the following consideration recited therein:

"For and in consideration that the party of the second part furnish to first party a home on the land hereinafter described and takes care of her and provides her the necessaries of life, and with medical aid and care in sickness and provides for her with food and clothing suitable to her rank and station in life."

May 16, 1931, Kelly Burton was shot and killed, and Joe Salyer, Arthur Salyer, George Salyer, Raney Arnett, and Asberry Arnett were indicted therefor and of these, three have been convicted.

Whether Kelly Burton left a will or not does not appear in this record. Mrs. Bailey continued to live there with Mrs. Burton, who is a niece of Mrs. Bailey, and about a year after Kelly Burton was killed Mrs. Burton married Lewis Cornwell, and Mr. and Mrs. Cornwell continued to keep and care for Mrs. Bailey thereafter.

Mr. Cornwell has no interest in this land and is not a party to this litigation. His wife, Eva Cornwell (formerly Eva Burton), has but a dower or homestead interest if Kelly Burton died intestate, and the title to this land is probably in (Marvin Burton aged seven and Jean Burton aged six) the children of Kelly Burton. It certainly is if he died intestate, which everything indicates is a fact though there is neither pleading or proof to that effect.

On May 1, 1933, Mrs. Bailey left this home and went to the home of Raney Arnett where she has since remained.

### Suit Filed.

On August 1, 1933, Mrs. Bailey began this litigation to set aside the deed of October 22, 1928, by filing her petition in equity against Eva Cornwell personally and as administratrix of Kelly Burton, the two infant children of Kelly Burton, and the Kentucky West Virginia Gas Company. The gas company has done nothing. Mrs. Cornwell, answering for herself and as administratrix of Kelly Burton and for the two children of Kelly Burton, put everything in issue. As administratrix, Mrs. Cornwell has nothing to do with this land. An order was entered controverting all pleadings. There is nothing to show any guardian ad litem was appointed for the children in the trial court or any notice given to them or any one for them of the taking of the depositions. They were simply ignored.

### The Proof.

The evidence is irreconcilable. Thirty-eight depositions were taken, some of which is to the effect that the old lady was not well cared for while other wit-

nesses testify she was. Much of the testimony of neglect and bad treatment comes from her daughters, Raney Arnett and Florence Sutton, and members of their families, who perhaps hope to profit by this deed's cancellation. Ninety years ago in Keltner v. Keltner, 6 B. Mon. (45 Ky.) 40, we indicated such testimony would be given but little weight.

Mrs. Bailey herself admits in her testimony she had had her separate room, that the house was good enough, that she was served with the same food as the remainder of the family, and a reading of her deposition leaves the impression she wants to cancel this deed because Kelly Burton is dead. She gave that in her petition as one of the reasons she wanted the deed canceled. The evidence leaves the impression the old lady was not so much dissatisfied with the situation as her children, Mrs. Raney, Mrs. Sutton, etc. Certainly there is no showing the chancellor erred in refusing to cancel this deed.

## It Was Adjudged.

"That the defendants are legally bound and obligated to support and maintain and furnish the plaintiff, Susan Salyer Bailey with food, clothing and the necessaries of life suitable to her rank, and station, and that they are not relieved of that obligation by the terms of this judgment. And that she has the right to return to their home and give them an opportunity to support and maintain her and to carry out and comply with the provisions and terms of said deed, and that it is the duty of defendants to so provide and maintain her and furnish her with a home, treat her with kindness and respect. And that upon their failure to so do, that she has a lien upon the land conveyed for her support and maintenance."

On May 5, 1934, Mrs. Bailey was granted an appeal to this court and this cause was stricken from the docket. This is the judgment that is before us on this appeal.

## The Children.

Courts ordinarily view contracts like this with an eye jealously watchful for the protection of the aged grantors, but we can imagine no more unfortunate occurrence for Mrs. Bailey than the death of Kelly Burton, for by it not only was Mrs. Bailey deprived of that

love and affection she would have had from him, but by his death (presuming he died intestate) the title to this land and the burden of Mrs. Bailey's support, etc., fell upon the tender and irresponsible shoulders of these little children, the particular favorites of the law, yea the very wards of the chancellor. This support is a covenant that runs with the land and these children took this land with a charge upon it for their great-grandmother's support.

Courts sometimes hold in cases like this that the grantee by failing to keep his contract has forfeited his rights, but against these children that holding cannot be. They cannot elect to rescind, they cannot refuse to perform, they cannot fail to comply, and it cannot be said as against them that this contract was obtained by fraud. They are innocent, unaware and helpless. Of course, even against them the court can subject this land to lien for Mrs. Bailey's support, etc., but she can only have as against them her contract there on the land, which Mrs. Bailey cannot subject to her lien so long as any one in privity with these children complies with this contract for them.

The appellants place their reliance upon two cases which we shall discuss. They are Maddox v. Maddox, 135 Ky. 403, 122 S. W. 201, and Beard v. Beard, 200 Ky. 4, 254 S. W. 430.

In the Maddox Case the old people had three sons. In September, 1900, they conveyed 243 acres of land to Moses R. Maddox and J. L. R. Maddox, Jr., upon condition that they should: (a) Pay their brother, W. P. Maddox, $200 for what the old people called his interest in the land, and (b) support the old people during their declining years and bury them decently when they died.

In May, 1908, J. L. R. Maddox, Jr., died intestate leaving a widow and two infant children. He was the grantee, who after the making of the deed there in question, had lived with and looked after his parents. Thereupon the aged grantors and the grantee, Moses R. Maddox, sued the widow and infant children of J. L. R. Maddox, Jr., to cancel the deed as to the one-half interest conveyed to J. L. R. Maddox, Jr. Their petition was dismissed upon demurrer, and on appeal to this court that judgment was reversed and defendants required to answer and it was held the old people might

have back the half of the land conveyed to J .L. R. Maddox, Jr., upon terms set out in the opinion. The facts there are so different from the facts here as to make that case inapplicable.

In the Beard Case the consideration in the deed was that the grantee son should furnish to his mother *a home with him.* There is no such provision in the deed before us, so that case is inapplicable.

### After Kelly Burton Was Killed.

Kelly Burton's widow was a niece of Mrs. Bailey, and after Burton's death the old lady continued to live there with his widow and children for about two years when she left, went to the home of the appellant Raney Arnett, and never returned.

Mrs. Bailey's original petition contains this:

"Plaintiff says * * * Kelly Burton was shot· and died on the 16th day of May, 1931, which has made it impossible for ·him to carry out and perform his contract with her, therefore the consideration has failed."

That is the general thought which runs throughout this case and around it Mrs. Bailey sought to build up her case and upon it she relied for recovery below and for reversal here. In other words, the contention of Mrs. Bailey was, and that of her heirs is, that by this deed she contracted for the personal services of Kelly Burton, that she was endeavoring to assure herself of his care and affection for her and not simply her board, and that no one else but him could render the services for which she contracted.

We think this question is settled by this which is quoted from 18 C. J. p. 370, sec. 401:

"In the absence of a contrary stipulation, a person other than the grantee may perform a condition to furnish support to the grantor; and the agreement is assignable, although there is a presumption that personal performance of the obligation is required of the grantee, where an aged parent conveys his property to a child on condition of support or care for life. But even in such a case it has been held that the child may discharge his obligation through the agency of a brother or sister instead of in person."

In support of the last sentence in that text Corpus Juris cites the case of Baugh v. Baugh, 157 Ky. 236, 162 S. W. 1118. In that case the two brothers to whom the farm was first conveyed moved away from the farm and placed a third brother thereon with whom they arranged for the care of their parents. This court upheld that arrangement. In this case we have not the same facts, the appellees claiming under Kelly Burton bear not the same filial relation to the grantor but they are near enough (his children, his widow, and grantor's niece) that they can be expected to give to the old lady care springing from love and affection as well as contract.

After the old lady left we had in Raney Arnett's conduct a similar state of facts to that in La Rue's Committee v. Williams, 211 Ky. 398, 277 S. W. 462, 463, and we there said:

"He could not, by thus taking his mother away from Mrs. Williams against her will and consent, deprive Mrs. Williams of the benefit of her contract."

Another case, presenting facts quite like this one, is that of Walker v. Maddox, 162 Ky. 784, 173 S. W. 137.

In Bowles' Adm'r v. Harvey, 189 Ky. 598, 599, 225 S. W. 367, 368, we said:

"One who conveys his land to another, in consideration of support, cannot claim a failure of consideration, where he alone is responsible for the grantee's failure to carry out the agreement."

We cited that in Elswick v. Elswick, 220 Ky. 723, 295 S. W. 1070, 1071, and said:

"The appellee should return to the home of appellants and give them an opportunity to fulfill their duty under the terms of the deed."

In La Rue's Committee v. Williams, 211 Ky. 398, 277 S. W. 462, 463 we said:

"The case presents merely a question of fact. It is the rule of this court not to disturb the finding of the chancellor on the facts where the evidence is conflicting and the mind is left in doubt as to the truth. The rule is largely based upon the fact that the chancellor is on the ground. He knows local

conditions and more or less knows the witnesses and the value of their testimony.''

That is very applicable here, for the chancellor not only lives in this county but in the neighborhood of this property, and we find nothing in the evidence to convince us there is any error in his conclusion.

The judgment is affirmed.