## Brooks v. Richardson, et al.

(Decided June 6, 1911.)

### Appeal from Hart Circuit Court.

Contracts—Action to Cancel—Care of Old and Disabled Persons—Question of Fact—The question here as to whether a contract for the care of appellant and his wife should be cancelled is one of fact, and the record examined and held not sufficient to disturb the finding of the chancellor refusing to cancel it. No questions of law are involved in the case.

WATKINS & CARDEN for appellant.

McCANDLESS & LARIMORE and J. L. RICHARDSON for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

On and prior to November 3, 1906, appellant and his wife resided in Horse Cave, Kentucky. Mrs. Brooks was paralyzed in her lower limbs and left side, and was helpless. She could talk and use her right arm to some extent. She weighed two hundred and forty or two hundred and fifty pounds. She was moved several times daily into and out of an invalid chair, and it required three persons to do this. It was very expensive to employ servants to do this work and appellant could keep them but a short time when he employed them; consequently the neighbors would have to aid him in caring for his wife, of which they grew weary after a while. Appellant worried over the matter until he at last concluded he would try to make a contract with appellee, R. T. Richardson, who married his wife's sister, to live with him as a member of his family during the balance of his and wife's lives. With this end in view, he made several attempts to get appellee, who resided in Hardyville, to come to Horse Cave. Appellee finally went to Horse Cave and appellant suggested the terms of a contract to which appellee consented and they had Mr. Edwards reduce it to writing, in duplicate. The contract is lengthy, so we will not copy it but give the substance of it. Appellant gave appellee two houses and lots in the town of Horse Cave, one valued at $1,500 and the other at $1,750, and a note which he held against him for $1,400, and which was a lien on appellee's home

place. It was also agreed between the parties and made a part of the contract, that appellee and his wife would convey to Brooks one-half of their home farm for the price of $2,000, appellee reserving the use and rents as part consideration for caring for appellant and his wife, and appellant bound himself in the contract to will this part of the farm to appellee. We will quote that part of the contract showing the consideration for the matter stated:

"The said R. T. Richardson is to furnish to the said Perry C. Brooks with a home in his house on the farm near Hardyville, Hart County, Ky., above described, and now the said property of the said parties jointly; and is to fnruish him with food and fires and to have their washing and ironing done for them and is to pay for such medical attention as they may need from some reputable practicing physician as are prescribed by the regular family physician of their choice; and is to give them such personal attention as they may need in sickness, and in every way treat them as members of his own family according to his own and their station and circumstances in life for the remainder of their lives of said Brooks and his wife respectively, but said Brooks and his wife are to use their own furniture as long as they have a sufficiency of same, and Brooks is to wait upon his wife who is an invalid as far as he is able to do so properly, and assist in caring for her whenever he is able to so assist. It is further agreed that said Richardson is to have use and control of the farm upon which he now lives, and which is now owned equally by said Richardson and said Brooks and is to have all the profits and rents of said farm as a further consideration of the maintenance of said Brooks and his wife as above set forth and it is now agreed between said parties that the net profits of said farm (or the one-half interest of said Brooks in same), with the $2,650 as above set forth is not more than fair compensation for the services to be performed and expense of properly carrying out this contract taking the chances of life of said Brooks and his wife and their ages and health at this time and if this contract is fully carried out, and said Brooks and his wife are cared for as herein stated up to the time of the death of said two parties, then in such case it is agreed that said Richardson is to have the one-half interest of said Brooks in the tract of land above described and said

Brooks agrees to make a will so disposing of it and in case he fails so to do it is agreed, and said Brooks expressly directs that this writing shall be and constitute a title bond for same; and it is now agreed that the compensation is ample if said contract is fully carried out.

Said Richardson is to keep up the fences on the farm and keep the buildings in good repair and keep the land up to its present state of fertility and condition, and to pay all taxes on the land. In case this contract can not be carried out by reason of death or unavoidable misfortune not the fault of either party hereto an equitable settlement is to be made in accordance with the terms of this contract for compensation as near as it is possible to do so.''

By this contract appellant gave away nearly half of his means to have himself and wife cared for the balance of their days. Appellant drew a pension of twelve dollars a month from the government. Appellant and his wife went to the home of appellee in December of the year the contract was made, and remained there until August 29, 1908, when he bought a tract of land in the neighborhood and moved to it with his wife and brought this action to cancel the contract and have his property restored to him.

Appellant alleged in his petition that he and his wife were not treated right at appellees' home; that they did not treat them as members of their family; that they made it so very unpleasant for them that they were compelled to move, and specified many acts of bad treatment. Appellees answered denying all the general and specific allegations, and claimed that they had fulfilled their part of the contract to the letter and were still willing, ready and able to comply with it; that appellant and his wife left their home without cause or any fault upon their part. A great deal of testimony was taken by both parties, and, on the trial, the lower court sustained the contract and directed it to be enforced according to its letter and spirit. The court further found that appellant's wife was dead, and that by reason of this litigation it would not be congenial for appellant to require him to live in appellees' home and referred the question of support, etc., of appellant to a special commissioner and directed him to take proof to ascertain how much money would be necessary annually to provide appellant with board, food, fires, washing, ironing, medicine,

medical attention and such personal attention as he might need in sickness according to the scale of living in Hart County, Ky., for persons of similar conditions and circumstances in life as that of appellees and appellant, and the cost of furnishing the same things to the wife of appellant from August 29, 1908, until her death, and required each party to pay their own cost.

The substance of appellant's petition is that at the date of the contract he was so feeble and demented in mind that he was not capable of entering into a business contract and that he did not understand the contract when he signed it, but does not state in what respect he did not understand it. He also alleged that appellees violated the contract as made in many respects.

Appellant introduced several witnesses who testified that at the time of and prior to the date of the contract, in their opinion appellant was not capable of protecting himself in a business transaction. They arrived at this conclusion by reason of his worry over the condition of his wife and the expenses incurred in caring for her. Appellees introduced many witnesses who were acquainted with and whose opportunities for knowing the mind of appellant were equally as good as those of appellant's witnesses, and they testified that he was of sound mind and fully capable of protecting himself in a business transaction. They say that there was apparently nothing wrong with his mind, but that he seemed to worry to some extent over the trouble of waiting on his wife and the expenses incurred in caring for her in her helpless condition. The testimony shows that appellant was sixty-eight years of age and in good health. The age of his wife is not shown. The preponderance of the evidence is to the effect that appellant was capable of entering into the contract. While appellant specified many acts of dereliction and wrong treatment in his pleadings, upon the part of appellees, his only complaint in his deposition is of their failure to treat him and his wife as members of their family. He claims that they did not treat them with courtesy; that they did not associate with them enough; that they failed to speak to them at times; that they ignored them at the table; that they would not pass them the food at the table as they did the others, and that these things occurred during the latter half of their stay in appellees' home.

He then introduced several witnesses who named particular things showing mistreatment in the matters named in the petition and in other respects, which, if true, ought to have caused the court to rescind the contract, but appellant failed to specify any of these things in his deposition, and appellees introduced many witnesses who showed the incorrectness of these statements.

The court was asked to cancel a contract that was fairly made. There is no charge of fraud or any effort made to show that appellees obtained it by any unfair means, and the preponderance of the evidence is to the effect that the parties were competent to make the contract; that appellant, in the main procured the execution of it; that appellees carried out their part of the contract so long as appellant and his wife remained with them. The lower court refused, as before stated, to cancel the contract, but made appellees responsible and directed that they carry out their contract to the letter from the time appellant and his wife left their house until their deaths.

The testimony shows that appellees learned that appellant and his wife were going to leave their home the day before they did leave, and that they made no effort to induce them to remain nor did they visit them after they did move until about three days before the death of the wife. We are of the opinion that appellees were in fault in this matter, but they gave as a reason for so acting that they thought they were not wanted and it would be unpleasant to appellant and his wife to try to persuade them to stay or to visit them, as this action was pending at that time. Under ordinary circumstances this excuse would be sufficient and the lower court determined it sufficient in this case and we are unwilling to disturb his finding on the facts.

The judgment of the lower court keeps this case on the docket for the purpose of seeing that the contract is faithfully carried out, and if appellant's condition should become such as to render the annual allowance insufficient to care for him, the court will then increase it.

No questions of law are involved in this case, the sole question for adjudication is one of fact as to whether the contract should be cancelled, and we do not

feel authorized to disturb the finding of the chancellor with reference thereto, therefore, the judgment is affirmed.