## Strain et al. v. Strain et al.

(Decided February 6, 1931.)

W. S. HOLMES for appellants.

JOHN H. GILLIAM for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE LOGAN—
Affirming.

John H. Strain died in 1928 at the age of eighty-six. He left children, one of whom was J. R. Strain. Prior to his death John H. Strain conveyed a tract of land described in the pleadings to J. R. Strain in considera- tion of the agreement on the part of J. R. Strain that he would take care of his father and furnish him decent burial after his death. He lived a year or more after the execution of the deed, and, upon his death, this suit was instituted by the other heirs praying that the deed be canceled. The prayer of the petition is based on the ground that John H. Strain was mentally incompetent to execute a deed at the time that he undertook to con- vey the property to his son, J. R. Strain.

This case does not present a question of breach of contract, or of undue influence, but the sole question made by the record is whether John H. Strain had suffi- cient mind and memory to know the legal effect of what he did when he executed the deed conveying the land to his son. The chancellor canceled the deed.

The wife of John H. Strain died about two years before his death. He conveyed the land now in contro- versy to his son, Harve Strain, upon the agreement of Harve, his son, to care for him during the remainder of his life. He became dissatisfied and instituted suit against Harve asking a cancellation of the deed which he had so executed, and the court granted him the relief which he sought. He resided for awhile with a daughter, but at last he found his way to the home of J. R. Strain in Muhlenberg county. How he came to the home of his son, J. R. Strain, is thus described by counsel for appel- lant in his brief:

"J. R. Strain, a son of the said John Henry Strain, left the county of his nativity and wandered West across Warren and Butler Counties well into the interior of Muhlenberg County, between seventy and eighty miles from his own home, and pitched his tent near the little inland town of Rosewood, a pic-

turesque and charming section, with its large primitive forests, and there carved for himself a pleasant and prosperous home. As a last resort his old and decrepit father, J. H. Strain, was compelled to turn to him for support in the last days of his pilgrimage.''

There is no complaint about the conduct of the appellant J. R. Strain, although there is some intimation that he agreed to pay the funeral expenses of his mother as a part consideration for the conveyance of the land, but that point is lost in the larger question of the father's mental competency to execute the deed. A large number of witnesses testified by deposition on both sides. The evidence is well summarized in both briefs. Counsel for appellant admits that the witnesses against his client testified strongly in behalf of the other side. He says:

''The foregoing excerpts were taken from appellees' proof. To my mind they failed to state what was expected of them, but I could not budge any of them on cross-examination. They were like the old Baptist deacon who said the horse was sixteen feet high. They said it and stuck to it. However, appellees' evidence has little weight in law, as it does not relate to the proper time.''

The evidence relates to a period beginning a year or more prior to the death of John H. Strain. The neighbors who knew him while he lived in Allen and in Warren testified that his mind was greatly impaired, and mentioned many incidents and circumstances which they had observed which form the basis of their conclusion that he was not competent to execute the deed at the time he attempted to make the conveyance to J. R. Strain. If the evidence of these witnesses was accepted by the chancellor as true, there was evidence on which to base his judgment that John H. Strain was not mentally competent to execute the deed.

The witnesses for appellant testified that John H. Strain was competent to know the nature and effect of his act when he executed the deed. A majority of these witnesses knew him after he went to the home of J. R. Strain, and some of them were present when he executed the deed and testified as to his mental competency at the time. Considering all of the evidence, the mind is left

in doubt as to whether there was such mental incapacity as to render John H. Strain mentally unable to comprehend or understand the subject of the contract, its nature and probable consequences. The presumption is that the grantor of land is possessed of capacity to convey, and the burden of proof is usually upon him who asserts the lack of capacity in the grantor. Bevins, et. al. v. Lowe et al., 159 Ky. 439, 167 S. W. 422. But when there is a close relationship between the parties, coupled with circumstances showing that the deed was executed when the grantor was old and feeble and near the time of his death, the burden shifts to the grantee to show that the deed was made at a time when the grantor had sufficient mental capacity to perform an act of such importance. Gregg v. Hedges' Guardian, 227 Ky. 268, 12 S. W. (2d) 854. The case just cited contains a full discussion of the question before us, as well as related questions, and we deem it unnecessary to go further into a citation of authorities. The rule is well settled that where there are confidential relations between the grantor and grantee such as existed in this case, the burden is shifted to the grantee to show the good faith of the transaction, and that it was free from fraud, undue influence, or other elements which are necessary to its validity.

The rule, however, should not be made unreasonably severe. An old man undoubtedly has the right to use his property to provide for his welfare and comfort, "in the days when the keepers of the house shall tremble, and the strong men shall bow themselves, and the grinders cease because they are few, and those that look out of the windows be darkened, and the doors shall be shut in the streets, when the sound of the grinding is low, and he shall rise up at the voice of the bird, and all the daughters of musick shall be brought low; also when they shall be afraid of that which is high, and fears shall be in the way, and the almond tree shall flourish, and the grasshopper shall be a burden, and desire shall fail; because man goeth to his long home, and the mourners go about the streets; Or ever the silver cord be loosed, or the golden bowl be broken, or the pitcher be broken at the fountain, or the wheel broken at the cistern."

It is sadly true that there are instances when an aged parent finds small comfort in the homes of some of his children when, perchance, there is one who will receive him, and give that loving attention and care so

274

necessary to the aged. . The rule should not be so written that in such a case the parent may not use the property he has to reward the one who assumes the burden of his care.

But in this case there is nothing before the court but the question of mental competency to execute the deed, and as the evidence is about equally balanced and the mind is left in doubt, the judgment of the chancellor connot be disturbed.

Judgment affirmed.