## Jones et al. v. Jones et al.

May 30, 1947.

Ward Yager, Judge.

L. M. Ackman for appellants.

Leslie W. Morris and Marion Rider for appellees.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Affirming.

This appeal presents a family controversy between two sons of Ruth Jones, deceased, on the one side, and two brothers and a sister on the other side. Appellants (the two sons) brought suit in equity to set aside, on the grounds of undue influence and mental incapacity, a deed executed by their mother conveying a farm in Owen County to the three principal appellees. A trial was had and the Chancellor, after hearing in open court a substantial portion of the testimony, dismissed appellants' petition.

On November 12, 1938, Ruth Jones, being at that time 74 years of age, conveyed to her three youngest children, John Jones, Beckham Jones and Flonnie Mae Stafford, a farm consisting of something over 112 acres. The consideration clause of the deed recited: ''The love and affection of first party for second parties and the

further valuable consideration that second parties are to look after, care for, board and clothe first party, pay taxes on the land conveyed by this deed, pay her doctor's bills and funeral expenses. Possession and control of the land conveyed by this deed is to remain in grantor so long as she lives."

This deed was recorded the same day it was executed. The grantor died almost six years later on August 22, 1944.

It is undisputed that Mrs. Jones had been crippled for many years prior to the execution of this deed; that after its execution two of the grantees, John Jones and Flonnie Stafford, had lived on the farm with their mother and adequately taken care of her up to the date of her death; and that the farm had a valuation of approximately $3,000.

Appellants' assertion of undue influence was based on the fact that the three children to whom the conveyance was made had been closely associated with their mother prior to its execution, and that they had met with her one night at Flonnie Stafford's house and the next day she had executed the deed.

With respect to mental incapacity, appellants claim that their mother was an old woman when she executed the deed; that she was not in good health; that she was physically disabled; that she had been to a sanitarium in Lexington some 20 years before; that she had little to say during the later years of her life; that she left the operation of the farm to others; that she was forgetful; and that one night she had beat on the side of the house with a stick.

There was a great deal of testimony taken for both sides. Appellants introduced some nine witnesses who had done housekeeping for Mrs. Jones or who were her neighbors and acquaintances. They testified to the facts set out in the preceding paragraph and further gave their opinion that Mrs. Jones was not capable of handling her own business affairs. There was some testimony about whether or not she peeled potatoes on various occasions, but we are unable to understand how this throws any light upon the controversy.

As opposed to the evidence presented by appellants,

appellees introduced the testimony of 29 witnesses, including among them two doctors and the lawyer who had drawn the deed at the request and in the presence of Mrs. Jones. These witnesses generally expressed the opinion that Mrs. Jones was not mentally incapacitated, and a number of them stated that she was a shrewd business woman.

The three appellees to whom this deed was made testified that for some time prior thereto their mother had been worried about being taken care of during her declining years. She apparently did not wish to live with her children, but desired to remain in her own home if she could be cared for by her own flesh and blood and not be cast upon her "in-laws." For this reason, according to appellees' testimony, she herself suggested the arrangement whereby three of her children should undertake to see that she was cared for the rest of her life, and in return for such agreement they were to have the farm. From credible evidence in the case, it appears that the deed was drawn to conform to her wishes as expressed to the three grantees, and that they performed in full their part of the bargain for almost six years.

It is true, as shown by the evidence, that some 20 years before the execution of the deed Mrs. Jones had been sent to a sanitarium, and there is some question as to whether or not her mind was affected at that time. It also appears that two of her sisters had been committed for mental incompetency. This evidence, however, is of slight value in determining Mrs. Jones' mental capacity at the time she made the deed.

Appellants' counsel has failed to state in his brief the issues of law and fact upon which he bases his request for reversal. The sum and substance of his contentions seem to be that appellees had the burden of proof and that they failed to sustain it.

It has been generally recognized by this Court that where a close relationship exists between an infirm parent and a child having his or her custody, such child has the burden of proving that a conveyance beneficial to him: (1) was made at a time when the parent had sufficient mental capacity, (2) was not the result of undue influence, and (3) was fair and equitable. Gregg

v. Hedges, Guardian et al., 227 Ky. 268, 12 S. W. 2d 854; Strain et al. v. Strain et al., 237 Ky. 270, 35 S. W. 2d 306; Moore's Adm'r v. Edwards, 248 Ky. 517, 58 S. W. 2d 915; Petrey's Adm'r et al. v. Petrey, 262 Ky. 222, 90 S. W. 2d 4. Accepting the above general rule as applicable to this case, we are of the opinion that appellees fully sustained the burden of proof.

In reaching this conclusion we have considered other principles just as well recognized. One is that the rule as to burden of proof should not be so construed as to prevent a parent from using his property to reward those who assume the burden of his care. Strain et al. v. Strain et al., 237 Ky. 270, 35 S. W. 2d 306; Dixon et al. v. Dixon et al., 236 Ky. 608, 33 S. W. 2d 611. Another is that our courts will not set aside a deed where there is no showing of imposition upon the grantor or injustice or inequity arising out of the transaction. Lexington & Eastern Railway Company v. Napier's Heirs et al., 160 Ky. 579, 169 S. W. 1017; Clay v. Clay's Committee, et al., 179 Ky. 494, 200 S. W. 934. Another is that the cancellation of a deed is the exertion of an extraordinary power of a court of equity which should not be exercised except in a clear case based on convincing evidence. Lossie v. Central Trust Company of Owensboro, 219 Ky. 1, 292 S. W. 338.

Finally it is a firmly established doctrine of this Court that we will not disturb the judgment of the Chancellor on conflicting evidence unless we have something more than a doubt as to the correctness of his findings. Craddock v. Kaiser et al., 280 Ky. 577, 133 S. W. 2d 916; Jones v. Tarry, 187 Ky. 700, 220 S. W. 523.

We have carefully considered all of the evidence in this case, and it amply supports the Chancellor's conclusions that Mrs. Jones had sufficient mental capacity when she executed the deed; that no undue influence was exercised; and that no injustice or inequity has been committed against appellants. We will not, therefore, disturb his findings and judgment.

We find it necessary to call attention of appellants' counsel to the fact that his brief wholly fails to comply with our Rules (Section 1.340) requiring (1) a concise statement and classification of the questions discussed

and (2) a concise statement of the facts at issue with exact reference to the pages of the record supporting them. These rules are more than suggestive, and it is the duty of the members of the Bar to comply therewith.

The judgment is affirmed.