Margaret N. SANDERS et al., Appellants,

v.

Annie NEEDY, Appellee.

Court of Appeals of Kentucky.

. Dec. 14, 1962.

of real estate worth $4000. During the course of the years she deeds an interest in these two properties to them. When a new home is built and the mother is invited to move, this does not suit at all. In the meantime she has acquired a monthly income of $50, and is no longer quite as dependent as she once was.

As so often happens, the other children suddenly become more interested in the mother's welfare. The next step is predictable: the mother (the plaintiff) sues to set aside the deeds. Anticipating the possibility of such relief being granted, defendants counterclaim for improvements they have put on the property. Thus we have this unhappy resort to the courts for settlement of a family problem.

The case was tried in two sections, partly by a jury and partly by the Chancellor. A judgment was entered cancelling the deeds (and an assignment instrument) and defendants were awarded $1500 on their counterclaim. The latter appeal and the plaintiff cross-appeals.

Before examining the merits of this action, certain settled principles may be restated. A suit to cancel a deed is peculiarly one of equitable cognizance. 9 Am. Jur., Cancellation of Instruments, sections 3 and 4 (pages 351, 352); Moore v. Bugg's Ex'r, 274 Ky. 135, 118 S.W.2d 185; Asher v. Hartlage, Ky., 336 S.W.2d 335; Teague v. Reid, Ky., 340 S.W.2d 235. A court of equity will not exercise this extraordinary power except in a clear case based on convincing evidence. Jones v. Jones, 305 Ky. 5, 202 S.W.2d 746; Harned v. Smoot, 306 Ky. 813, 209 S.W.2d 485. A deed should not be cancelled if the parties cannot be restored to their former position. 9 Am.Jur., Cancellation of Instruments, sections 39 and 41 (pages 384, 385); Gabbard v. Truett, Ky., 283 S.W.2d 833. This is particularly true when there is an alternate equitable solution of the controversy. Brooks v. Richardson, 144 Ky. 102, 137 S.W. 840; Richardson v. Brooks, 155 Ky. 830, 160 S.W. 1199; Ford v. Ingleheart, Ky., 320 S.W.2d 134.

Marshall B. Hardy, Jr., Hardy & Logan, Charles A. Walter, Louisville, for appellants.

Henry D. Hopson, Hamilton, Hopson & Hamilton, Louisville, for appellee.

CLAY, Commissioner.

This unfortunate family controversy became unnecessarily complicated by pleadings, procedure and proof. It is interesting to speculate what might have been accomplished in a pretrial conference.

The story has a familiar pattern. A widowed mother lives for 16 years with one of her daughters and her son-in-law, the defendants. The modest home is owned by the mother and she also owns another piece

In our opinion the method by which this case was tried did not permit the proper application of these (and other) equitable principles and led to a judgment which cannot be sustained.

In spite of the many grounds for cancellation of these deeds (and the assignment instrument which is in the same category) alleged by the plaintiff, there was only one which had any semblance of support in the evidence. That was a partial failure of consideration. There was no fraud, deception, coercion, or false promises. In spite of plaintiff's allegation that the deeds were *without* consideration, she herself sought to prove adequate consideration in the form of a *promise* to furnish a home for her during her lifetime. The primary issues in the case were whether the defendants had made the promise, and if so, whether they had substantially failed to carry out their part of the bargain.

The trial of these issues was transferred to a common pleas branch of the Jefferson Circuit Court presided over by another judge. A nine man verdict, favorable to the plaintiff, was rendered. The Chancellor accepted the verdict as conclusive and thereupon expended his equitable powers in determining what credit should be allowed defendants for their improvements on the property.

■■ Invoking the aid of the law side of the court is of ancient origin and is known as an "issue out of chancery". In the Jefferson Circuit Court, unlike single judge courts, the Chancellors do not impanel juries. In an equity case if the Chancellor deems a jury determination of an *issue of fact* expedient, the trial of that issue may be most conveniently conducted by the presiding judge of a common pleas branch of the court. The Chancellor may not, however, thereby delegate to another branch of the court or to a jury the final adjudication of questions upon which an equitable decision must be based.

■ This is an equitable action. Every phase of it must be decided by the Chancellor. Under CR 39.03 the Chancellor may try the case *with* an advisory jury, but he must try the case and he is not bound by the jury verdict. See Anheier v. De Long, 164 Ky. 694, 176 S.W. 195; Quinn v. Hendren, 187 Ky. 283, 218 S.W. 1022. Transferring an issue of fact to the common pleas branch of the court does not convert an equity case into a legal one with respect to that issue.

■ The Chancellor must necessarily retain some control of this procedure by designating the issues to be tried, writing instructions if any, limiting the scope of evidence to be heard, etc. See 30 C.J.S. Equity § 504, page 900. We think it is also essential that he be in a position to review both the evidence and the verdict.

In some jurisdictions an issue is not submitted to a jury until the Chancellor has heard *all the evidence* and is in doubt. 19 Am.Jur., Equity, § 401 (page 274). In other jurisdictions it is proper for the Chancellor to rehear the evidence after a jury verdict. See 156 A.L.R. 1170. In other jurisdictions the presiding judge makes a report to the Chancellor concerning the conduct of the trial, including an expression of approval or disapproval of the verdict. See 30 C.J.S. Equity section 508, page 903.

In order for the Chancellor to evaluate the verdict and determine the ultimate equities in the case, he must at least have a working knowledge of the evidence heard before the jury, particularly when it is pertinent to the basic controversy. While the presiding judge of the law side of the court may properly conduct the jury proceedings, it would appear the simplest and most satisfactory method of accomplishing this end would be for the Chancellor to be physically present at such hearing. Having the evidence transcribed would perhaps serve the purpose, although this obviously would entail expense and delay. Whatever the method, it should insure an enlightened equitable decision on the whole case. Otherwise there would be a delegation of equitable powers to a jury.

■ The utilization of an advisory jury by a Chancellor should be the exception rather than the rule, especially when issues of fact cannot be cleanly segregated from the ultimate equities of the controversy. See 19 Am.Jur., Equity, § 401 (page 274). The learned Chancellor was eminently qualified to decide all the issues and the nature of this controversy would seem to require his doing so. In any event, it is our opinion the jury verdict was not sufficiently supported by the testimony and it should not have been given the weight and finality accorded it by the Chancellor. We believe this led to a judgment unwarranted by the evidence.

■ In the light of the principles heretofore discussed, there are a number of substantial reasons why these deeds should not be set aside. One is that the first deed was made so long ago that the parties could not possibly be put in the position they were before its execution. See Gabbard v. Truett, Ky., 283 S.W.2d 833. Another is that the later deeds were executed freely and voluntarily by the plaintiff *after* the alleged incidents of mistreatment about which she complains. See Carpenter v. Carpenter, 293 Ky. 317, 168 S.W.2d 1014. Another is, the mother did not inform the defendants they were failing in the fulfillment of their obligations (assuming there were any obligations). See Hatfield v. Harris, 197 Ky. 490, 247 S.W. 729; Carpenter v. Carpenter, 293 Ky. 317, 168 S.W.2d 1014; Teague v. Reid, Ky., 340 S.W.2d 235. Another is, the defendants changed their position by making improvements and buying a new house in reliance upon the validity of these deeds. Another is, the impossibility (the Chancellor in his opinion twice noted it as an "extreme difficulty") of fairly making allowance to the defendants for the improvements (because of the long period involved).

Finally, the defendants have expressed a willingness to perform all their obligations which may have arisen by virtue of these family transactions. By answer they state they are ready, willing and able to furnish the plaintiff a home with them at their new residence. Anticipating that this continuation of the former arrangement would not now be satisfactory to the plaintiff (which is apparently true), in the alternative the defendants have offered to pay to the plaintiff the sum of $75 a month and to give her possession of the home place. In addition, they offered to transfer to the plaintiff their interest in $800 worth of stock in a building and loan association which she had assigned to them in 1954. (Apparently this stock was to be kept as a reserve for the funeral expenses of the plaintiff.)

■ The evidence would perhaps justify a finding in this case that there was an implied obligation on the part of the defendants to continue to maintain a home for the plaintiff. We do not think the plaintiff proved by clear and convincing evidence a substantial breach of this obligation by the defendants. See Hatfield v. Harris, 197 Ky. 490, 247 S.W. 729; Elswick v. Elswick, 220 Ky. 723, 295 S.W. 1070; Moore v. Bugg's Ex'r, 274 Ky. 135, 118 S.W.2d 185. However, their offer solves this problem. Exact performance in accordance with the understanding of the parties appears no longer possible, but what defendants are willing to do constitutes more than an adequate quid pro quo for these conveyances. Bearing in mind that the properties involved are of modest value, that the defendants have in the past made substantial contributions to the plaintiff's welfare, and that she still owns an undivided interest in the home place, the equities may be fairly balanced without nullifying the past transactions.

For the many reasons heretofore discussed, we can find no equitable justification for cancelling these deeds, or requiring the transfer of the building and loan stock, or requiring the defendants to return the $4000 sale price of one piece of property. The rights of all parties may be fully recognized and protected by requiring the defendants to comply substantially with their offer. This makes unnecessary an adjudication of de-

**118**

fendants' counterclaim and disposes of plaintiff's cross-appeal with respect thereto.

The judgment is reversed. The Chancellor is directed to enter a judgment decreeing that (1) the defendants pay to the plaintiff the sum of $75 per month during her lifetime, (2) the plaintiff is entitled to the exclusive use and occupancy of the real estate located at 2713 Northwestern Parkway in Louisville, Kentucky, during her lifetime if she elects to live there, the defendants to share the cost of taxes, insurance and maintenance of said property according to their interests therein, (3) if plaintiff does not so elect, the net income from said property shall be shared by the plaintiff and defendants according to their interests therein. The Chancellor may further include in the judgment any other provisions necessary and proper to protect the rights of the parties consistent with this opinion.

The costs on this appeal shall be paid by the appellee and all costs in the lower court shall be equally divided between the parties.